D. Creighton Sebra, Esq. (admitted pro hac vice)
CLARK HILL PLLC
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Ph. (213) 891-9100; fax (213) 488-1178
Email: CSebra@ClarkHill.com

Bert Wuester Jr., Esq. (NSBN 5556)
CLARK HILL, PLLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Ph. (702) 862-8300; fax (702) 862-8400
Email: bwuester@clarkhill.com
Attorneys for Use-Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, For the Use and Benefit of SOURCE HELICOPTERS, DIVISION OF ROGERS HELICOPTERS, INC., a California corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>SAYERS CONSTRUCTION, LLC, a Texas limited liability company PHILADELPHIA INDEMNITY INSURANCE COMPANY, a PENNSYLVANIA corporation; and DOES I-V and ROE CORPORATIONS I-V,<br><br>    Defendants. | Case No. **2:19-CV-01602-JCM-EJY** |

## JOINT PRETRIAL ORDER

**I.    NATURE OF THE ACTION.**

    **A.    BACKGROUND.**

In November 2017, Defendant, Sayers Construction, LLC ("Sayers") and Use-Plaintiff, Source Helicopters, Division of Rogers Helicopters, Inc. ("Rogers") executed a subcontract (the "subcontract") for Rogers to perform work for Sayers on a government electrical construction project (the "project").

Rogers commenced this action on September 11, 2019, with a complaint alleging two causes of action: breach of contract against Sayers and violation of the Miller Act against Sayers and Defendant, Philadelphia Indemnity Insurance Company ("PIIC"), Sayers's surety on the bond issued for the subcontract pursuant to the Miller Act.

Sayers answered Rogers's complaint on November 14, 2019, and later amended its answer to include three counterclaims for fraudulent inducement, statutory fraud, and breach of contract. Both parties assert affirmative defenses for the breach of contract claims, with Rogers claiming waiver and estoppel and Sayers claiming it was excused from performance due to Rogers's breach. The Court's Order filed March 14, 2022 (ECF #92) granted Rogers' motion for summary judgment against Sayers's fraudulent inducement and statutory fraud claims. Id., 9:12-15, 11:22.

### B. REMAINING ISSUES AND CLAIMS

The Court's Order filed March 14, 2022 (ECF #92), provides, in pertinent part:

The only issues remaining for trial are thus Sayers's amount of damages for its breach of contract counterclaim, and Rogers's amount of damages for its Miller Act claim.

\*\*\*

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Rogers's motions for summary judgment (ECF Nos. 73, 74) be, and the same hereby are, GRANTED in part and DENIED in part. Summary judgment is granted in favor of Rogers on

the liability portion of its Miller Act claim and on Sayers's fraud counterclaims and denied on all other issues.

IT IS FURTHER ORDERED that Sayers's motion for summary judgment (ECF No. 76) be, and the same hereby is, GRANTED in part and DENIED in part. Summary judgment is granted in favor of Sayers on its breach of contract counterclaim and Rogers's affirmative defenses, Rogers's breach of contract claim and Sayers's affirmative defense, and denied on all other issues.

Id., 11:15-16, 19-27, respectively.

However, the Court's Order filed June 22, 2022 (ECF #105), which addressed PIIC's motion for reconsideration and clarification of the court's order on summary judgment (ECF #93) and Rogers' motion for reconsideration and clarification of the court's order on summary judgment (ECF #97), provides, in pertinent part:

Considering that 100% of Rogers's work occurred after it had materially breached the subcontract by failing to start by the agreed upon date, that Sayers continued to deal with Rogers instead of finding a new subcontractor, and that Sayers's work and materials were adequate in all aspects other than timeliness, there remain genuine disputes of material fact as to whether Sayers terminated the contract or treated it as continuing despite Rogers's breach. While the court did not find evidence that Sayers made a clear and unequivocal waiver of Rogers's deadlines, a trier of fact could determine that Sayers's conduct after Rogers's breach treated the contract as continuing and therefore waived any right to an excusal defense for Rogers's breach of contract claim.

Rogers's breach of contract claim relies on a finding that Sayers was not excused from performing, and Rogers's affirmative defense is the waiver/estoppel discussed above. Therefore, the court erred in granting summary judgment on those issues. The court now holds that summary judgment is not warranted in favor of Rogers or Sayers on their dueling breach of contract claims and respective affirmative defenses.

Consequently, as Rogers's Miller Act claim requires a finding that it supplied materials in prosecution of the work provided for in the contract, the court clarifies its holding regarding that claim. As PIIC correctly argues, the measure of Rogers's recovery under the Miller Act is based on the amount justly due under the subcontract that PIIC's bond is premised upon. Therefore, PIIC's liability on

Rogers's Miller Act claim is measured by the amount Sayers is liable to Rogers on its breach of contract claim. As the court vacates its grant of summary judgment in favor of Sayers on its breach of contract claim, it also vacates summary judgment in favor of Rogers on its Miller Act claim.

In summary, the court vacates its previous order as to its holdings on Rogers's breach of contract claim, Sayers's affirmative defense, Sayers's breach of contract counterclaim, Rogers's affirmative defenses, and Rogers's Miller Act claim. This matter is not appropriate for summary judgment on those issues because genuine issues of material fact exist as to whether Sayers's conduct constitutes treating the subcontract as continuing after Rogers's initial and subsequent breaches of the subcontract's time is of the essence clause.[1]

To clarify, the court's previous order remains in effect as to its rulings on Sayers's motion to strike, Sayers's motion to exceed page limits, and summary judgment on Sayers's fraud-based claims. (See ECF No. 92 at 11–12).

IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Rogers's motion for reconsideration (ECF No. 97) be, and the same hereby is, GRANTED. The court's grant of summary judgment in favor of Sayers on Sayers's breach of contract counterclaim, Rogers's affirmative defenses, Rogers's breach of contract claim, Sayers's affirmative defense, and in favor of Rogers's on its Miller Act claim (ECF No. 92) are VACATED. Summary judgment is DENIED on those issues.

IT IS FURTHER ORDERED that Philadelphia's motion to clarify (ECF No. 93) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with this order.

Id., Order (ECF #105), 4:15 to 6:2.

II.     **STATEMENT OF JURISDICTION.**

---

[1] [Original fn.2] Consequently, PIIC's motion to reconsider is moot.

Rogers' action arises, and the court has jurisdiction, under the Miller Act, United States Code Annotated, Title 40, Sections 3131 to 3134 (40 USC §§ 3131 to 3134). Rogers also invokes the pendent jurisdiction of this court as to any claims or causes of action which are not subject to the Miller Act, such claims presenting substantial issues before this court. Any and all claims found pendent are joined in this action as being derived from the common, operative facts of the Miller Act claims. The Court also has subject matter jurisdiction over Sayers's counterclaims pursuant to 28 U.S.C. § 1332, as the action is between subjects of foreign states and the amount in controversy exceeds $75,000.

III.   **STATEMENT OF ADMITTED FACTS.**

The following relevant facts are admitted by the parties and require no proof.

1.   Sayers entered into a written contract (the "Prime Contract") with the United States of America, acting by and through the United States Department of Energy, Western Area Power Administration, for the project generally referred to as the "Mead-Perkins & Mead Marketplace 500kV Transmission Line Spacer Damper Replacement Project" (the "Project").  ECF #53:1-5.

2.   On or about September 22, 2017, pursuant to the terms of the Prime Contract, Sayers, as principal, PIIC (Sayers and PIIC sometimes collectively referred to as "Defendants"), as surety, executed and delivered a bond to the United States, conditioned as required by the Miller Act, whereby said Defendants bound themselves jointly and severally for the purpose of allowing a joint action or actions against any or all of them and bound themselves in a sum of money equal to the contract price.  ECF #1, ¶ 8, pg. 3

3.   Sayers admits Philadelphia Indemnity Insurance Company issued a bond with

Sayers as principal.   ECF #53, at 3:8-9.  <u>See</u> <u>also</u> *Performance and Payment Bond #PB03016800140 (*unsigned) at PIIC000020-25.[2]

4.     PIIC admits issuing a bond with Sayers as principal. ECF #9, at 2:10-11.[3]

5.     On or about November 1, 2017, Rogers entered into a written contract (having a caption of "Agreement Between Contractor and Subcontractor" which is hereinafter referred to as the "Subcontract") with Sayers, under which Rogers agreed to perform certain work and provide certain labor, equipment and materials required for the Project under the Prime Contract.  ECF #1 (Complaint), ¶ 9, pg. 4. <u>See</u> <u>also</u> ECF #1-1 (Subcontract); <u>see</u> <u>also</u>, Subcontract, at PIIC 1-19;[4] ECF #53, at 3:12-14; <u>see</u> <u>also</u> 4:24-25, and 7:18-20 ("On or about November 1, 2017, Sayers and Rogers entered into the Agreement between Contractor and Subcontractor (the "Agreement") pertaining to Rogers' work on the Mead-Perkins & Mead-Marketplace 500kV Transmission Line Spacer Damper Replacement Project (the "Project")").

## IV.     <u>STATEMENT OF UNCONTESTED FACTS.</u>

The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

1.     Sayers did not pay on any invoice issued by Rogers in or after November 2018. The unpaid invoices include:

Invoice No. 202764 (re: order no. 202468)          $160,650.00
Invoice No. 202779 (re: order no. 202478)          $60,000.00

---

[2] Included with *Initial Disclosures of [PIIC] Pursuant to Fed.R.Civ.P. 26(f)* dated 11-18-2019.

[3] ECF #9 is *Philadelphia Indemnity Insurance Company's Answer to Plaintiff's Complaint* filed 10-14-19.

[4] Included with *Initial Disclosures of [PIIC] Pursuant to Fed.R.Civ.P. 26(f)* dated 11-18-2019.

| Invoice No. 202780 (re: order no. 202469) | $20,812.50 |
| Invoice No. 202781 (re: order no. 202479) | $462,437.50 |
| Invoice No. 202889 (re: order no. 202564) | $15,640.00 |
| Retention (on prior invoices) | $235,069.50 |
| Total | $954,609.50 |

ECF #1 (Complaint), ¶ 12, pg. 5; see also response to interrogatory no. 8 in *Use-Plaintiff's Responses to Defendant Philadelphia Insurance Company's Interrogatories* served December 2, 2020; *Sworn Statement of Claim – Construction Contract – Payment Bond* (ROGERS-000026)[5]; Rogers invoices for same (ROGERS-000070-75)[6].

2.      Under the Prime Contract, Sayers's deadline to complete the Project was September 25, 2018, or approximately one year from receiving notice to proceed. WAPA later modified this deadline to November 30, 2018.

3.      The Subcontract provides at Paragraph 2:

2. CONTRACT AMOUNT. Subject to the other terms and conditions of the Contract Documents, Contractor [Sayers] agrees to pay Subcontractor [Rogers] for satisfactory and timely performance and completion of Contract Work in accordance and compliance with the Contract Documents: the fixed, lump sum price of three million four hundred fifty eight thousand eight hundred twenty five dollars. ($3,458,825). (Capitalization emphasis in original.)

Id., ECF #1-1, at pg. 4 of 19, ¶ 2; see also Subcontract, at PIIC 3.

4.      The Subcontract provides at Paragraph 10.1:

10.1,   WAIVER OF CONSEQUENTIAL DAMAGES. The Second-Ter Subcontractor, Subcontractor, and Contractor hereby waive any and all claims against each other for consequential or special damages arising out of or relating to

---

[5] Included with *Use-Plaintiff's Initial Disclosures, Pursuant to Fed.R.Civ.Pro. 26(a)(1)* dated 11-6-2019.

[6] Included with *Use-Plaintiff's Initial Disclosures, Pursuant to Fed.R.Civ.Pro. 26(a)(1)* dated 11-6-2019.

this Contract. This mutual waiver includes damages incurred by the Contractor for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with the provisions herein.

Id., ECF #1-1, at pgs. 9-10 of 19, ¶ 10.1; see also Subcontract, at PIIC 8-9.

## V.   STATEMENT OF CONTESTED ISSUES OF FACT[7].

The following are the issues of fact to be tried and determined upon trial.

### A.   Rogers' statement of contested issues of fact:

1.   Sayers's amount of damages.

2.   Rogers' amount of damages.

3.   The amount of Sayers's alleged delay damages which fall within the exclusion of consequential damages under paragraph 10.1 of the Subcontract.

4.   The modification of the Subcontract by oral agreement, including the start and completion dates.

5.   The conduct of the parties and their course of dealing with one another, including mutual agreement inferred from the circumstances whereby modification of the Subcontract occurred, including the start and completion dates.

6.   Modification of the start and completion dates for the Project, including, but not limited to, Mr. Prawitz's testimony that he sent an email dated December 7, 2017, to Dwayne Moquett which included a revised schedule with a revised commencement date of January 8, 2018, and revised completion date of August 6, 2018.  Mr. Prawitz testified this modified the construction schedule accordingly.  Id., ¶24.  He testified this revised scheduled was the schedule Sayers

---

[7] Should the attorneys be unable to agree on the statement of issues of fact, the joint pretrial order should include separate statements of issues of fact to be tried and determined upon trial.

intended Rogers to adhere to for the Project and that this revised schedule for Rogers was also within the timeframes that WAPA provided to Sayers for Sayers to complete its work under the Prime Contract. Id., ¶25.

7.     Whether Rogers actually completed the Project early, as opposed to late.

8.     Whether the time is of the essence clause of the Subjection was material.

9.     Whether any breach by Rogers was material.

10.    Whether the time is of the essence clause was extended by agreement or waiver.

11.    Whether Sayers, the purported non-breaching party, is not excused from performance because it elected to continue with the Subcontract.  By accepting Rogers' purported untimely mobilization and completion of the Project (Sayers did not cancel the Subject with Rogers and did not replace Rogers with another subcontractor), Sayers waived the provision that time was of the essence, or waived its right to sue for damages.

12.    Whether Sayers acceptance of Rogers' purported late performance indicated that Sayers did not intended that time be of the essence.

13.    Sayers treated the Subcontract as continuing and, therefore, is deprived of any excuse for ceasing performance on its own part.

14.    Application of the election remedy in the at-issue Subcontract at Paragraph 11.1 – Contractor can give notice of failure of performance and can remedy and charge cost to Subcontractor.

15.     In his expert witness capacity, Mr. Sayers testified there were no issues with the quality of Plaintiff's work; no issues as far as the installation, per se. See M. Sayers's 4-19-21 depo., 35:20-24.

16.    Mr. Sayers testified WAPA approved the work performed by Rogers. See M. Sayers's 4-19-21 depo., 36:11-13.

17.     Mr. Sayers testified WAPA did not file any claims against Sayers's performance bond on the Project. See M. Sayers's 2-8-21 (vol. 2) depo., 135:3-8.

18.     Mr. Sayers testified Sayers work was competed per the Prime Contract with WAPA. See M. Sayers's 2-8-21 (vol. 2) depo., 135:9-12.

19.     Mr. Sayers testified he is unaware of any documents that proves WAPA had not paid Sayers for units that were not installed. See M. Sayers's 2-8-21 (vol. 2) depo., 137:7-17.

20.     Mr. Sayers testified he is unaware of any deductive change order or modification (also unaware of any amount) to the Prime Contract between WAPA and Sayers that deducted for units that were not installed. See M. Sayers's 2-8-21 (vol. 2) depo., 137:18 to139:18.

21.     Mr. Sayers testified that Sayers revenue for the Project was the same, regardless of whether there were delays or not. M. Sayers's 2-8-21 (vol. 2) depo., pg. 223.

22.     Notwithstanding there being no issues with the work provided by Rogers pursuant to the Subcontract, Sayers has failed to fully pay Rogers.

23.     Sayers has failed to pay any invoice issued by Rogers in or after November 2018 despite the fact that Sayers has been paid by the United States Department of Energy, Western Area Power Administration for a majority of the work covered by the invoices.

24. Rogers' is entitled to an award of prejudgment interest. It is well settled that a subcontractor may recover Prompt Payment Act interest, or statutory prejudgment interest, as a component of its damages on a Miller Act Payment Bond claim. See Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 763-764 (10th Cir. 1997) (prejudgment interest is ordinarily available in federal cases if the award of interest would serve to compensate the injured party and would not be precluded by the equities); United States ex. rel. Lochridge-Priest v. Con-Real Support Group, Inc., 950 F.2d 284, 289; Miletta v. United States f/u/b Ranco Constr., 2005 WL 1318867 at 13

(D.N.J., May 27, 2005) (principal and surety held jointly and severally liable for principal and interest due for violation of the Prompt Payment Act.); <u>United States f/u/b Pro Controls Corp. v. Conectiv Servs.</u>, 2003 WL 22025016 at 13 (D. Kan, Aug. 27, 2003) (failure to abide by the requirements of the Prompt Payment Act was a breach of contract and the interest; subcontractor able to seek damages related to payments made later than seven (7) days as part of breach of contract claims). Put another way, the award of interest in an action against the surety simply represents a way to make the Plaintiff whole. <u>Mass. Law Reform Institute, Inc., et. al. v. Legal Service Corp., et. al.</u> 601 F. Supp. 415 (D.D.C. 1984), citing <u>Turgeon v. Howard University</u>, 571 F. Supp. 679, 685 (D.D.C. 1983).

25. Sayers has been paid by the United States Department of Energy, Western Area Power Administration for the work covered by above-listed invoices.

26. WAPA approved the work performed by Rogers. <u>See</u> M. Sayers's 4-19-21 depo., 36:11-13.

27. WAPA did not file any claims against Sayers's performance bond on the Project. <u>See</u> M. Sayers's 2-8-21 (vol. 2) depo., 135:3-8.

5. Sayers's work was competed per the Prime Contract with WAPA. <u>See</u> M. Sayers's 2-8-21 (vol. 2) depo., 135:9-12.

**B.   <u>Sayers's statement of contested issues of fact:</u>**

1. Whether Rogers materially breached the Subcontract by failing to timely mobilize on or complete its work under the Progress Schedule.[8]

---

[8] The Court's Order on Rogers's motion for reconsideration [Dkt. #105] does not vacate its prior ruling that Rogers

2.     The extent to which Sayers was damaged resulting from Rogers's untimely performance of the Subcontract.

3.     Whether the parties modified the Subcontract, including the time is of the essence provision or the Progress Schedule.

4.     Whether there was sufficient consideration for any modification of the Subcontract.

5.     Whether there was sufficient meeting of the minds between Sayers and Rogers necessary for a modification of the Subcontract.

6.     Whether Prawitz lacked the authority necessary to unilaterally modify the Subcontract.

7.     Whether Sayers intended to enforce the Subcontract's time is of the essence provision.

8.     Whether Sayers intended to treat the Subcontract as continuing following Rogers's breach.

9.     Whether Sayers waived its right to enforce the Subcontract's time is of the essence provision.

10.    Whether Rogers's estoppel affirmative defense is precluded by Sayers's clear statements at the outset of and during the Project.

11.    Whether Rogers's material breach of the Subcontract excused Sayers's future

---

materially breached the Subcontract. *See* Order [Dkt. #105] at 4 ("Considering that 100% of Rogers's work occurred *after it had materially breached the subcontract* . . . there *remains* genuine disputes of material fact as to whether Sayers terminated the contract or treated it as continuing *despite Rogers's breach*."). Sayers states the issue here to avoid unintentional waiver, but it contends the Court has resolved the issue.

performance.

12.     Whether Sayers was obligated to pay Rogers for its delayed work.

13.     Whether Rogers failed to satisfy the condition precedent of timely written notice of its claims.

14.     Whether Sayers waived its right to an excusal defense for Rogers's breach of contract claim.

15.     Whether and to what extent Rogers was damaged from Sayers's purported breach of the Subcontract.

C.     **PIIC's statement of contested issues of fact:**

1.   Before entering into its contract with Sayers, Rogers made promises concerning mobilization and completion of its scope of work.

     (a) On October 14, 2017, Rogers provided an anticipated progress schedule for the Project, which included a mobilization date of December 4, 2017.

Evidence:  ECF 76-10

     (b) On October 19, 2017, however, Rogers stated internally that the mobilization date was tentatively scheduled for January 7, 2018.

Evidence:  ECF 76-14

     (c) On October 25, 2017, Rogers indicated to Sayers that the January 8, 2018 mobilization dated would be a "worst case date".

Evidence:  ECF 76-12

     (d) In response, Sayers made clear the January 8, 2018 mobilization date was <u>not</u>

an option, and that it had already submitted the initially proposed December 4, 2017 mobilization date to WAPA.

<u>Evidence</u>:  ECF 76-13

    (e)  In response Rogers assured Sayers that mobilization would begin no later than December 4, 2017.

<u>Evidence</u>: ECF 76-16.

  2.  The Subcontract between Sayers and Rogers contains a Progress Schedule which was binding on Rogers.

    (a)  Following Rogers's assurances, on or about November 1, 2017, Sayers and Rogers executed an Agreement between Contractor and Subcontractor for Rogers's work on the Project (the "Subcontract"), valued at $3,458.825.

<u>Evidence</u>:  ECF 76-14; 53-1.

    (b)  The Subcontract included a progress schedule (the "Progress Schedule") with a December 4, 2017 mobilization date, wherein Rogers would initiate work on the Mead-Marketplace 500kV Transmission Line.

<u>Evidence</u>:  ECF 76-14, 53-1

    (c)  Further, the Progress Schedule stated Rogers would complete its work on the Project by July 20, 2018.  Importantly, Rogers agreed to be bound by the Subcontract's Progress Schedule.

<u>Evidence</u>:  ECF 76-14; 53-1; Section 7 of ECF 76-14.

    (d)  Under section 1.3 of the Subcontract, Rogers was responsible for acquiring

permits, organizing and completing trainings, and procuring the materials and equipment necessary to complete the Project.   Importantly, the Subcontract included a "time of the essence" provision:

1) Time is of the essence in the performance, discharge and completion of the Contract Work and Subcontractor's obligations, duties and responsibilities under the Contract Documents and Subcontractor shall perform and provide Contract Work for the Project strictly in accordance with the Progress Schedule prepare or to be prepared by contractor after (to the extent practicable) consultation with Subcontractor, and as it may change from time to time.

2)

> Evidence:  ECF 76-14, 53-1

(e) Under section 8 of the Subcontract, no amendment to the Progress Schedule would be effective without a change order executed by Contractor (Sayers) *and* Subcontractor (Rogers):

3) No adjustment in the Contract Amount, Progress Schedule, or time/schedule of or of performance and completion of Contract Work shall be permitted, except as expressly authorized by a final, fully executed Change Order in a form acceptable to Contractor . . . and then only if and to the extent of the part of a final, fully executed change order between Contractor and Subcontractor pertaining to contract work.

> Evidence:  ECF 76-14, 53-1.

(f) Under section 12.1, Rogers, as Subcontractor, must give Sayers seven days' notice of all claims or else the claim would be waived:

4)  Subcontractor shall give Contractor written notice of all claims within seven (7) days of Subcontractor's knowledge of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed waived.

Evidence:  ECF 76-14, 53-1.

(g) Further, section 14 of the Subcontract provides the agreement was fully integrated and could not be amended without written agreement by Sayers and Rogers:

[T]he Contract Documents contain the parties' entire agreement, and this Agreement may not be amended or modified except as provided for herein or in writing duly executed by both parties[.]

Evidence:  ECF 76-14, 53-1

(h) Section 14 of the Subcontract includes a nonwaiver provision that requires any waiver from Contractor (Sayers) to be in writing and duly executed:

[A]ny waiver by Contractor of any requirement, term, condition, or provision hereof, shall not constitute a continuing waiver thereof or a waiver of any other requirement, etc., and must be in writing and duly executed and delivered by the Contractor in order to be effective and binding[.]

Evidence:  ECF 76-14, 53-1

3.  Plaintiff failed to timely mobilize or complete its work under the Progress Schedule.

(a) Rogers did not initiate work on the Project until January 9, 2017—well past the agreed-upon December 4, 2017 mobilization date.

Evidence:  ECF 76-6, Response No. 5.

(b) Over the course of the Project, Rogers consistently fell behind the pace

necessary for timely completion.  On multiple occasions, Sayers expressed its

concerns to Rogers, and it sought assurances that Rogers would timely complete

its work on the Project.  For instance, Sayers communicated with Rogers on the

following occasions:

(1) On February 23, 2018, Kris Potts, a project manager for Sayers emailed

Dwayne Moquett, Operations Manager for Rogers, stating his concern for

Rogers's low rate of work on the Project.

5) <u>Evidence</u>:  ECF 76-19.

(2) On April 20, 2018, Mark Sayers ("Mr. Sayers") emailed Moquett to discuss

continued concerns regarding the Project's timely completion.  Specifically,

Mr. Sayers discussed Sayers's communications with WAPA concerning the

Progress schedule, adding a second and third helicopter to the Project, and

the financial implications for both parties if Rogers did not timely complete

its work on the Project.

6) <u>Evidence</u>:  ECF 76-20.

(3) On May 2, 2018, Mr. Sayers emailed Moquett and Lou Woodward, a

business development and marketing representative for Rogers, to discuss

Rogers's second helicopter pilot not being onsite for work, and he reiterated

the need for having two helicopter crews consistently working on the

Project to maintain the Progress Schedule.  Importantly, Sayers reiterated

time was of the essence, and that it would send out legal notice regarding

Rogers's deficiencies on the Project if necessary.

7)   Evidence:  ECF 76-21.

(4) On May 14, 2018, Jack Ryan, a project manager for Sayers, emailed Moquett and Woodward to provide production details on the Project from April 30, 2018, through May 13, 2018.  Specifically, Ryan stated the Project was only 26% complete, well-behind the 49% completion benchmark intended for that date.  Moreover, Rogers's spreadsheet projections had omitted 1,570 units for the Project, which would require an additional week of work for three helicopter crews.  Ryan made clear that only by utilizing a third helicopter crew would Rogers be able to timely complete the Project.

8)   Evidence:  ECF 76-22.

(5) On May 14, 2018, Mr. Sayers emailed Woodward and Moquett to inform them Rogers had one week to correct its operations on the Project, or Sayers would have to consider alternative approaches to timely complete the Project.  Mr. Sayers reiterated Sayers's efforts to improve Rogers's rate of work for six months, but to no avail.

9)   Evidence:  ECF 76-22.

(6) On May 15, 2018, Marcus Willoughby, a project manager for Sayers, emailed Moquett to discuss Rogers's daily arrival and departure times from the Project site, Sayers's insistence that Rogers understand and meet daily production goals, and the goal of having more proactive management on the

Project site.

10) <u>Evidence</u>:  ECF 76-23.

      (7) On May 21, 2018, Ryan emailed Moquett and Woodward with updated production details on the Project from May 14, 2018, to May 19, 2018. Ryan stated the Project was only 30% complete, while the Project was 52% through its scheduled timeline.

11) <u>Evidence</u>:  ECF 76-24.

      (8) On May 29, 2018, Ryan emailed Moquett and Woodward with updated production details on the Project from May 21, 2018, through May 27, 2018. Ryan stated the Project was only 33% complete, while the Project was 55% through its scheduled timeline.

12) <u>Evidence</u>:  ECF 76-24.

      (9) On June 2, 2018, Mr. Sayers emailed Moquett to discuss further low productivity from Rogers's crews, caused in part by an inexperienced helicopter pilot, using an inefficient number of spacer carts to perform work, and a shortage of lineman in the crews working the Project.  Mr. Sayers requested feedback on how to resolve the productivity issues to avoid a breach in contract due to no-performance.

13) <u>Evidence</u>:  ECF 76-24.

      (10)     On June 4, 2018, Sayers sent a notice to Rogers of its continued delays on the Project and failure to meet work obligations under the

Subcontract and the Progress Schedule.   The letter requested Rogers provide a working plan to Sayers within fifteen days detailing how rogers intended to complete its work on the Project in a timely manner.

14) <u>Evidence</u>:  ECF 76-25.

(c) Rogers did not put together a new working plan—instead, it continued to utilize its original work plan, which was insufficient to timely complete the Project. Moreover, Rogers did not provide additional labor, equipment, or materials necessary to accelerate its rate of work.

15) <u>Evidence</u>:  ECF 76-5, pages 126:21 – 127:19.

(d) Rogers complete its work on the Project on November 18, 2018, well past the agreed-upon July 20, 2018 completion date.

16) <u>Evidence</u>:  ECF 76-6, Response No. 6.

(e) At no point during the Project timeline did Sayers and Rogers formally execute a change order modifying the Subcontract's Progress Schedule to extend Rogers's Project deadlines.

17) <u>Evidence</u>:  ECF 76-1, pages 111:17 – 112:3, 131:10-14; 132:10-16; 136:11-17.

    4.   Plaintiff failed to provide the required bond.

18) <u>Evidence</u>:  ECF 73, page 4, para. 10.

    5.   Plaintiff failed to comply with contract provisions concerning its unpaid invoices.

(a) Between November 2018 and June 2019, Rogers sent five invoices to Sayers for Rogers's purported work on the Project from October 2018 through June

2019 (the "Invoices").

19) <u>Evidence</u>:  ECF 76-27

(b) The Invoices were "Net-30," thus requiring Sayers remit payment within thirty days of the invoice date.

20) <u>Evidence</u>:  ECF 76-7; pages 16:20 – 17:14.

(c) Sayers did not remit payment for these invoices.

21) <u>Evidence</u>:  ECF 76-7, pages 16-21.

(d) When the thirty-day period lapsed for each Invoice, Rogers did not provide written notice to Sayers regarding the outstanding payments—rather, Donna Nisbett, Rogers's General manager, merely called Sayers at unspecified times to remind it of the purportedly outstanding Invoices.

22) <u>Evidence</u>:  ECF 76-7, pages 17-21.

(e) The Invoice dates, timeframe for Sayers to remit payment on each Invoice and deadline for Rogers' written notice concerning non-payment were as follows:

(1) Invoice No. 202764

- Date of Invoice:  November 19, 2018

- Deadline to Pay Invoice:  December 19, 2018

- Deadline for Rogers to provide written notice:  December 26, 2018

23)

(2) Invoice No. 202779

- Date of Invoice:  November 30, 2018

- Deadline for Sayers to remit payment:  December 30, 2018

- Deadline for Rogers to provide written notice:  January 6, 2019

24)

(3) Invoice No. 202780

- Date of Invoice:  November 19, 2018

- Deadline for Sayers to remit payment:  December 19, 2018

- Deadline for Rogers to provide written notice:  December 26, 2018

25)

(4) Invoice No. 202781

- Date of Invoice:  November 30, 2018

- Deadline for Sayers to remit payment:  December 30, 2018

- Deadline for Rogers to provide written notice:  January 6, 2019

26)

(5) Invoice No. 202889

- Date of Invoice:  June 1, 2019

- Deadline for Sayers to remit payment:  July 1, 2019

- Deadline for Rogers to provide written notice:  July 8, 2019

Evidence:  ECF 76-27.

1. PIIC incorporates Sayers's contested facts as its own.

2. Whether Rogers has established the factual elements to qualify as a beneficiary of the bond.

## VI.     STATEMENT OF CONTESTED ISSUES OF LAW[9].

The following are the issues of law to be tried and determined upon trial.

### A.     Rogers' statement of contested issues of law:

1.      Whether, if after a party breaches a contract, the other party continues to insist on performance on the part of the party in default, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties.

2.      Whether, where one party materially breaches a contract, the non-breaching party is forced to elect between two courses of action—continuing performance or ceasing performance.

3.      Whether treating a contract as continuing, after a breach, deprives the non-breaching party of any excuse for terminating their own performance.

### B.     Sayers's statement of contested issues of law:

1.      Whether the Subcontract's time is of the essence provisions is material.[10]

2.      Whether Sayers's damages resulting from Rogers's untimely performance under the Subcontract constitute direct, not consequential, damages.[11]

3.      Whether modification of the Subcontract requires a mutual written agreement.

---

[9] Should the attorneys be unable to agree on the statement of issues of law, the joint pretrial order should include separate statements of issues of law to be tried and determined upon trial.

[10] The Court's Order on Rogers's motion for reconsideration [Dkt. #105] does not vacate its prior ruling that the Subcontract's time is of the essence provision is material. *See generally* Order [Dkt. #105]. Sayers states the issue here to avoid unintentional waiver, but it believes the Court has resolved the issue.

[11] The Court's Order on Rogers's motion for reconsideration [Dkt. #105] did not vacate its prior ruling that Sayers' damages are direct damages, not consequential. *See* Dkt. #92 at 8. Sayers states this issue to avoid unintentional waiver, but it contends the Court has resolved the issue.

4.      Whether Sayers is estopped from enforcing the Subcontract's time is of the essence provision.

5.      Whether Rogers's waiver affirmative defense is precluded by the Subcontract's nonwaiver provision.

6.      Whether Rogers's estoppel affirmative defense is precluded by the express terms of the Subcontract.

7.      Whether equitable reformation of the Subcontract is appropriate.

8.      Whether Rogers can recover under the Subcontract when its invoices seek payment for work performed and materials provided outside the timeframe of the parties' progress schedule.

9.      Whether and to what extent Sayers is entitled to pre-judgment interest and attorneys' fees.

10.     Whether Rogers is entitled to pre-judgment interest and attorneys' fees.

**C.      PIIC's statement of contested issues of law:**

1.      Whether Rogers' claimed damages are 'justly due" under the Miller Act;

2.      Whether Rogers' delays in completing its work were material breaches of contract;

3.      Whether a material breach of contract by Rogers prevents Rogers from recovering damages after the delays;

4.      Whether Rogers is entitled to pre-judgment interest and attorney's fees

5.      PIIC incorporates Sayers's constested issues of lawas its own.

6.      Whether Rogers has established the legal elements to qualify as a

beneficiary of the bond.

## VII.   EXHIBITS.

  A.   **THE FOLLOWING EXHIBITS ARE STIPULATED INTO EVIDENCE IN THIS CASE AND MAY BE SO MARKED BY THE CLERK:**

  1.   **Rogers' Exhibits: To the extent not objected to below.**

  2.   **Sayers's Exhibits: To the extent not objected to below.**

  3.   **PIIC's Exhibits: To the extent not objected to below.**

  B.   **AS TO THE FOLLOWING EXHBITS, THE PARTY AGAINST WHOM THE SAME WILL BE OFFERED OBJECTS TO THEIR ADMISSION ON THE GROUNDS STATED:**

  1.   **Set forth Rogers' exhibits and the objections to them:**

  **Rogers' Exhibits:**

| Bate # | Description | Production and Date |
|---|---|---|
| ROGERS – 000001-000021 | Documents pertaining to Solicitation Offer, and Award | Initial Disclosure 11-6-19 |
| ROGERS – 000022-000025 | Payment Bond | Initial Disclosure 11-6-19 |
| ROGERS – 000026 | Sworn Statement of Claim – Construction Contract – Payment Bond | Initial Disclosure 11-6-19 |
| ROGERS – 000027-000044 | Agreement Between Contractor and Subcontractor with certain attachments | Initial Disclosures 11-6-19 |
| ROGERS – 000045-000060 | Various email correspondence between Rogers Helicopters and Sayers | Initial Disclosures 11-6-19 |
| ROGERS – 000061-000065 | Sayers Construction progress billing to WAPA from January 2019 | Initial Disclosures 11-6-19 |
| ROGERS – 000066 – 000069 | Portion of a payment request certification from Sayers Construction submitted to WAPA on March 4, 2019 | Initial Disclosures 11-6-19 |
| ROGERS – 000069 | Sayers Construction invoice dated March 2019 | Initial Disclosures 11-6-19 |

| Bate # | Description | Production and Date |
|---|---|---|
| ROGERS – 000070-000075 | Rogers Helicopters invoice nos. 202764 (re: order no. 202468); 202779 (re: order no. 202478); 202780 (re: order no. 202469); 202781 (re: order no. 202479); 202889 (re: order no. 202564) | Initial Disclosures 11-6-19 |
| ROGERS – 000076-000077 | Sayers Construction change order dated September 25, 2018 | Initial Disclosures 11-6-19 |
| ROGERS – 000078-000093 | Sub-Tier Subcontractor Agreement with Foothills Energy Services, Inc., dated 5-10-17 with certain exhibits/attachments | Initial Disclosures 11-6-19 |
| ROGERS – 000094 | Email from J. Ryan to Dwayne Moquett dated 9-3-18 | Initial Disclosures 11-6-19 |
| ROGERS – 000095 - 000096 | Email from Richard Duarte to Jillian Web dated 3-11-19 | Initial Disclosures 11-6-19 |
| ROGERS – 000097 | Rogers' Account Receivable Aging Report – Detail Report | First Supplement 1-30-2020 |
| ROGERS – 000098 - 000130 | Rogers' Invoices to Sayers Construction | First Supplement 1-30-2020 |
| ROGERS – 000131 – 000132 | Morpac Industries Invoice and Packing Slip | First Supplement 1-30-2020 |
| ROGERS – 000133 | 4-30-19 spacer cart delivery receipt | First Supplement 1-30-2020 |
| ROGERS – 000134  – 000136 | 12-7-17 email with attached schedule | First Supplement 1-30-2020 |
| ROGERS – 000137 – 000138 | Change Authorization Order dated 9-25-2018 | First Supplement 1-30-2020 |
| ROGERS – 000139 – 000166 | Emails regarding productions update | First Supplement 1-30-2020 |
| ROGERS – 000167 – 000175 | Letter dated 1-14-19 from John E. McOsker to Mark Sayers w/ exhibits A and B | First Supplement 1-30-2020 |
| ROGERS – 000176 | May 14 phone meeting notes | First Supplement 1-30-2020 |
| ROGERS – 000177 – 000178 | May 14 and May 15, 2018, emails | First Supplement 1-30-2020 |
| ROGERS – 000179 | June 4, 2018 phone meeting notes | First Supplement 1-30-2020 |
| ROGERS – 000180 – 000182 | June 4, 2018, letter from Sayers Construction to Rogers | First Supplement 1-30-2020 |
| ROGERS – 000183 – 000184 | December 8, 2018, letter from Sayers Construction to Rogers | First Supplement 1-30-2020 |
| ROGERS – 000185 – 000200 | Emails | First Supplement 1-30-2020 |
| ROGERS – 000201 – 000205 | Documents regarding spacer carts, including quotation, purchase order, letters | First Supplement 1-30-2020 |

| Bate # | Description | Production and Date |
|---|---|---|
| ROGERS–000206–000609, ROGERS–000611–000776 | | Second Supplement 7-20-2020 |
| ROGERS–000777–000871 | | Third Supplement 7-21-2020 |
| ROGERS–000872–001824[12] | | Fourth Supplement 12-03-2020 |

### Sayers's objections to Rogers' exhibits:

| Bate # | Description | Sayers's Objections |
|---|---|---|
| ROGERS – 000001-000021 | Documents pertaining to Solicitation Offer, and Award | |
| ROGERS – 000022-000025 | Payment Bond | |
| ROGERS – 000026 | Sworn Statement of Claim – Construction Contract – Payment Bond | |
| ROGERS – 000027-000044 | Agreement Between Contractor and Subcontractor with certain attachments | |
| ROGERS – 000045-000060 | Various email correspondence between Rogers Helicopters and Sayers | Irrelevant; prejudicial |
| ROGERS – 000061-000065 | Sayers Construction progress billing to WAPA from January 2019 | |
| ROGERS – 000066 – 000069 | Portion of a payment request certification from Sayers Construction submitted to WAPA on March 4, 2019 | |
| ROGERS – 000069 | Sayers Construction invoice dated March 2019 | |
| ROGERS – 000070-000075 | Rogers Helicopters invoice nos. 202764 (re: order no. 202468); 202779 (re: order no. 202478); 202780 (re: order no. 202469); 202781 (re: order no. 202479); 202889 (re: order no. 202564) | |
| ROGERS – 000076-000077 | Sayers Construction change order dated September 25, 2018 | Irrelevant; prejudicial |

[12] It is noted that employee address information was redacted on U.S. Department of Labor payroll documents, including document nos. 1009, 1014, 1770, 1774, 1776, 1778, 1780, 1784, 1786, 1788, 1790, 1792, 1794, 1797, 1799, 1801, 1803, 1805, 1808, 1810, 1812, 1815, 1817, 1819, 1821, AND 1823. Also, the birth date of a particular employee was redacted (see document 996).

| Bate # | Description | Sayers's Objections |
|---|---|---|
| ROGERS – 000078-000093 | Sub-Tier Subcontractor Agreement with Foothills Energy Services, Inc., dated 5-10-17 with certain exhibits/attachments | |
| ROGERS – 000094 | Email from J. Ryan to Dwayne Moquett dated 9-3-18 | Irrelevant; prejudicial; hearsay |
| ROGERS – 000095 - 000096 | Email from Richard Duarte to Jillian Web dated 3-11-19 | Irrelevant; prejudicial; hearsay |
| ROGERS – 000097 | Rogers' Account Receivable Aging Report – Detail Report | |
| ROGERS – 000098 - 000130 | Rogers' Invoices to Sayers Construction | |
| ROGERS – 000131 – 000132 | Morpac Industries Invoice and Packing Slip | Irrelevant; prejudicial |
| ROGERS – 000133 | 4-30-19 spacer cart delivery receipt | Irrelevant; prejudicial |
| ROGERS – 000134 – 000136 | 12-7-17 email with attached schedule | Irrelevant; prejudicial; hearsay |
| ROGERS – 000137 – 000138 | Change Authorization Order dated 9-25-2018 | Irrelevant; prejudicial |
| ROGERS – 000139 – 000166 | Emails regarding productions update | |
| ROGERS – 000167 – 000175 | Letter dated 1-14-19 from John E. McOsker to Mark Sayers w/ exhibits A and B | Irrelevant; prejudicial; hearsay; misleading |
| ROGERS – 000176 | May 14 phone meeting notes | Irrelevant; prejudicial; hearsay |
| ROGERS – 000177 – 000178 | May 14 and May 15, 2018, emails | |
| ROGERS – 000179 | June 4, 2018 phone meeting notes | Irrelevant; prejudicial; hearsay |
| ROGERS – 000180 – 000182 | June 4, 2018, letter from Sayers Construction to Rogers | |
| ROGERS – 000183 – 000184 | December 8, 2018, letter from Sayers Construction to Rogers | |
| ROGERS – 000185 – 000200 | Emails | Irrelevant; prejudicial |
| ROGERS – 000201 – 000205 | Documents regarding spacer carts, including quotation, purchase order, letters | Irrelevant; prejudicial |
| ROGERS– 000206–000609, ROGERS– 000611–000776 | | Multiple documents/improper compilation; irrelevant; prejudicial; hearsay |
| ROGERS– 000777–000871 | | Multiple documents/improper compilation; irrelevant; prejudicial; hearsay |

| Bate # | Description | Sayers's Objections |
|--------|-------------|---------------------|
| ROGERS–000872–001824[13] | | Multiple documents/improper compilation; irrelevant; prejudicial; hearsay |

### PIIC's objections to Rogers' exhibits:

PIIC joins and adopts Sayers's objections to Rogers' exhibits as PIIC's own objections.

### 2.   Set forth Sayers's exhibits and the objections to them:

### Sayers's Exhibits:

| Exhibit # | Bates # | Description | Production and Date |
|-----------|---------|-------------|---------------------|
| SX-01[14] | PIIC_000001-000019 | Subcontract between Sayers and Source/Rogers | |
| SX-02 | Sayers_0000123 | Email correspondence between representatives for Sayers and representatives for Rogers, dated August 14, 2017 | Sayers Production No. 1, April 22, 2020 |
| SX-03 | Rogers_000001-000021 | Solicitation, Offer, and Award from the Western Area Power Administration ("WAPA") to Sayers for the Mead-Perkins & Mead-Marketplace 500kV Transmission Line Spacer Damper Replacement Project ("Project") | |
| SX-04 | Rogers_000061-000065 | WAPA Construction Contract Summary and Voucher for the Project, dated January 24, 2019 | |
| SX-05 | Sayers_0000142 | Email correspondence from Dwayne Moquett to Lou Woodward from Rogers and representatives for Sayers, dated October 14, 2017 | Sayers Production No. 1, April 22, 2020 |
| SX-06 | Rogers_001712-001713 | Email correspondence between Dwayne Moquett and Kelly Clark | |

---

[13] It is noted that employee address information was redacted on U.S. Department of Labor payroll documents, including document nos. 1009, 1014, 1770, 1774, 1776, 1778, 1780, 1784, 1786, 1788, 1790, 1792, 1794, 1797, 1799, 1801, 1803, 1805, 1808, 1810, 1812, 1815, 1817, 1819, 1821, AND 1823. Also, the birth date of a particular employee was redacted (see document 996).

[14] Sayers refers to its exhibits with the nomenclature "SX-0#."

| Exhibit # | Bates # | Description | Production and Date |
|---|---|---|---|
| | | from Rogers, dated October 19, 2017 | |
| SX-07 | Sayers_0000063 | Email correspondence between representatives for Rogers and representatives for Sayers, ranging from October 19, 2021, to October 25, 2021 | Sayers Production No. 1, April 22, 2020 |
| SX-08 | Sayers_0000576 | Email correspondence between Mark Sayers and Kris Potts from Sayers, dated November 9, 2017 | Sayers Production No. 1, April 22, 2020 |
| SX-09 | Sayers_0000502 | Email correspondence from Donna Nisbett from Rogers to representatives for Sayers, dated November 1, 2017, attaching the Agreement between Contractor (Sayers) and Subcontractor (Rogers) for the Project | Sayers Production No. 1, April 22, 2020 |
| SX-10 | Sayers_0000021 | Subcontract's Progress Schedule | Sayers Production No. 1, April 22, 2020 |
| SX-11 | Rogers 001707-001708 | Email correspondence from Kris Potts from Sayers to Mark Sayers and Dwayne Moquett, dated February 23, 2018 | |
| SX-12 | Sayers_0000112 | Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to April 23, 2018 | Sayers Production No. 1, April 22, 2020 |
| SX-13 | Sayers_0000104 | Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to May 2, 2018 | Sayers Production No. 1, April 22, 2020 |
| SX-14 | Sayers_0000101 | Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to May 14, 2018 | Sayers Production No. 1, April 22, 2020 |
| SX-15 | Sayers_0000173 | Email correspondence between | Sayers Production |

| Exhibit # | Bates # | Description | Production and Date |
|---|---|---|---|
| | | representatives from Sayers and representatives from Rogers, ranging from May 14, 2018, through May 15, 2018 | No. 1, April 22, 2020 |
| SX-16 | Sayers_0000153 | Email correspondence between representatives from Sayers and representatives for Rogers, ranging from March 5, 2018, through June 4, 2018 | Sayers Production No. 1, April 22, 2020 |
| SX-17 | PIIC_000168-000170 | Letter from Mark Sayers on behalf of Sayers Construction to Rogers, dated June 4, 2018 | |
| SX-18 | Sayers_0001687-0001689 | WAPA Mead Perkins Subcontract Change Order Number 0003—Revision 2 | Sayers Production No. 3, October 20, 2020 |
| SX-19 | Rogers_000070-000076 | Invoices sent by Rogers to Sayers, ranging from November 19, 2018, through June 1, 2019. | |
| SX-20 | PIIC_000173-000175 | Letter correspondence from John E. McOsker, counsel for Rogers, to Philadelphia Indemnity Insurance Company ("Philadelphia"), dated February 15, 2019 | |
| SX-21 | PIIC_000183-000184 | Letter from Creighton Sebra, counsel for Rogers, to Philadelphia, dated August 14, 2019 | |
| SX-22 | Rogers_000777-000782 | Letter correspondence from the Federal Aviation Administration to Source Helicopters, a Division of Rogers Helicopters, Inc. ("Rogers"), dated August 1, 2017 | |
| SX-23 | Sayers_0000004 | Email correspondence from Lou Woodward from Rogers to Alex Prawitz from Sayers, dated August 25, 2017 | Sayers Production No. 1, April 22, 2020 |
| SX-24 | Sayers_0000138 | Email correspondence from Lou Woodward from Rogers to Kris Potts and Alex Prawitz from Sayers, dated October 19, 2017 | Sayers Production No. 1, April 22, 2020 |
| SX-25 | Sayers_0000065 | Email correspondence from | Sayers Production |

| Exhibit # | Bates # | Description | Production and Date |
|---|---|---|---|
| | | Woodward from Rogers to Kris Potts from Sayers, dated October 25, 2017 | No. 1, April 22, 2020 |
| SX-26 | Sayers_0000512 | Email correspondence between Sayers representatives and Dwayne Moquett and Lou Woodward from Rogers, dated December 4, 2017 | Sayers Production No. 1, April 22, 2020 |
| SX-27 | Sayers_0000020 | Pricing schedule included within the Agreement Between Contractor and Subcontractor, dated November 1, 2017 | Sayers Production No. 1, April 22, 2020 |
| SX-28 | Sayers_0001687-1738, 1740 | Checks and Invoices | Sayers Production No. 3, October 20, 2020 |
| SX-29 | Sayers_001739 | P&L and Transaction Statements | Sayers Production No. 3, October 20, 2020 |
| SX-30 | Sayers_001763-1790 | Bank Statements | Sayers Production No. 4, November 9, 2020 |
| SX-31 | Sayers_001791-001806 | General Ledgers | Sayers Production No. 4, November 9, 2020 |
| SX-32 | Sayers_001835-001845 | P&L by Class, Payroll Summaries, and Accounting Reports | Sayers Production No. 4, November 9, 2020 |
| SX-33 | Sayers_001846-001850 | Checks and Invoices | Sayers Production No. 4, November 9, 2020 |
| SX-34 | Sayers 0000576 | Email from Kris Potts to Mark Sayers forwarding correspondence between Sayers and Rogers, dated November 9, 2017 | Sayers Production No. 1, April 22, 2020 |

**Rogers' objections to Sayers's exhibits:**

| Exhibit # | Bates # | Description | Rogers' Objections |
|---|---|---|---|
| SX-01 | PIIC_000001-000019 | Subcontract between Sayers and Source/Rogers | |

| Exhibit # | Bates # | Description | Rogers' Objections |
|---|---|---|---|
| SX-02 | Sayers_0000123 | Email correspondence between representatives for Sayers and representatives for Rogers, dated August 14, 2017 | |
| SX-03 | Rogers_000001-000021 | Solicitation, Offer, and Award from the Western Area Power Administration ("WAPA") to Sayers for the Mead-Perkins & Mead-Marketplace 500kV Transmission Line Spacer Damper Replacement Project ("Project") | |
| SX-04 | Rogers_000061-000065 | WAPA Construction Contract Summary and Voucher for the Project, dated January 24, 2019 | |
| SX-05 | Sayers_0000142 | Email correspondence from Dwayne Moquett to Lou Woodward from Rogers and representatives for Sayers, dated October 14, 2017 | |
| SX-06 | Rogers_001712-001713 | Email correspondence between Dwayne Moquett and Kelly Clark from Rogers, dated October 19, 2017 | |
| SX-07 | Sayers_0000063 | Email correspondence between representatives for Rogers and representatives for Sayers, ranging from October 19, 2021, to October 25, 2021 | |
| SX-08 | Sayers_0000576 | Email correspondence between Mark Sayers and Kris Potts from Sayers, dated November 9, 2017 | |
| SX-09 | Sayers_0000502 | Email correspondence from Donna Nisbett from Rogers to representatives for Sayers, dated November 1, 2017, attaching the Agreement between Contractor (Sayers) and Subcontractor (Rogers) for the Project | |
| SX-10 | Sayers_0000021 | Subcontract's Progress Schedule | |

| Exhibit # | Bates # | Description | Rogers' Objections |
|---|---|---|---|
| SX-11 | Rogers 001707-001708 | Email correspondence from Kris Potts from Sayers to Mark Sayers and Dwayne Moquett, dated February 23, 2018 | |
| SX-12 | Sayers_0000112 | Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to April 23, 2018 | |
| SX-13 | Sayers_0000104 | Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to May 2, 2018 | |
| SX-14 | Sayers_0000101 | Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to May 14, 2018 | |
| SX-15 | Sayers_0000173 | Email correspondence between representatives from Sayers and representatives from Rogers, ranging from May 14, 2018, through May 15, 2018 | |
| SX-16 | Sayers_0000153 | Email correspondence between representatives from Sayers and representatives from Rogers, ranging from March 5, 2018, through June 4, 2018 | |
| SX-17 | PIIC_000168-000170 | Letter from Mark Sayers on behalf of Sayers Construction to Rogers, dated June 4, 2018 | |
| SX-18 | Sayers_0001687-0001689 | WAPA Mead Perkins Subcontract Change Order Number 0003—Revision 2 | |
| SX-19 | Rogers_000070-000076 | Invoices sent by Rogers to Sayers, ranging from November 19, 2018, through June 1, 2019. | |
| SX-20 | PIIC_000173-000175 | Letter correspondence from John E. McOsker, counsel for Rogers, to | |

| Exhibit # | Bates # | Description | Rogers' Objections |
|---|---|---|---|
|  |  | Philadelphia Indemnity Insurance Company ("Philadelphia"), dated February 15, 2019 |  |
| SX-21 | PIIC_000183-000184 | Letter from Creighton Sebra, counsel for Rogers, to Philadelphia, dated August 14, 2019 |  |
| SX-22 | Rogers_000777-000782 | Letter correspondence from the Federal Aviation Administration to Source Helicopters, a Division of Rogers Helicopters, Inc. ("Rogers"), dated August 1, 2017 |  |
| SX-23 | Sayers_0000004 | Email correspondence from Lou Woodward from Rogers to Alex Prawitz from Sayers, dated August 25, 2017 |  |
| SX-24 | Sayers_0000138 | Email correspondence from Lou Woodward from Rogers to Kris Potts and Alex Prawitz from Sayers, dated October 19, 2017 |  |
| SX-25 | Sayers_0000065 | Email correspondence from Woodward from Rogers to Kris Potts from Sayers, dated October 25, 2017 |  |
| SX-26 | Sayers_0000512 | Email correspondence between Sayers representatives and Dwayne Moquett and Lou Woodward from Rogers, dated December 4, 2017 |  |
| SX-27 | Sayers_0000020 | Pricing schedule included within the Agreement Between Contractor and Subcontractor, dated November 1, 2017 |  |
| SX-28 | Sayers_0001687-1738, 1740 | Checks and Invoices | Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is |

| Exhibit # | Bates # | Description | Rogers' Objections |
|---|---|---|---|
| | | | otherwise inadmissible |
| SX-29 | Sayers_001739 | P&L and Transaction Statements | Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible |
| SX-30 | Sayers_001763-1790 | Bank Statements | Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible |
| SX-31 | Sayers_001791-001806 | General Ledgers | Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible |

| Exhibit # | Bates # | Description | Rogers' Objections |
|---|---|---|---|
| SX-32 | Sayers_001835-001845 | P&L by Class, Payroll Summaries, and Accounting Reports | Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible |
| SX-33 | Sayers_001846-001850 | Checks and Invoices | Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible |
| SX-34 | Sayers 0000576 | Email from Kris Potts to Mark Sayers forwarding correspondence between Sayers and Rogers, dated November 9, 2017 | |

**PIIC's objections to Sayers's exhibits:**

PIIC has no objections to Sayers's exhibits

**3.   Set forth PIIC's exhibits and the objections to them:**

**PIIC's Exhibits:**

1.   Rule 30(b)(6) Oral deposition of Sayers Construction, LLC ("Sayers"), by and through Mark Sayers, taken on December 14, 2020.

2. Oral and Videotaped Deposition of Dwayne Moquett, taken on January 28, 2021.

3. Rule 30(b)(6) Oral Deposition of Source Helicopters, Division of Rogers Helicopters, Inc. ("Rogers"), by and through Robin Rogers, taken on April 15, 2021.

4. Rule 30(b)(6) Oral Deposition of Source Helicopters, Division of Rogers Helicopters, Inc., by and through Donna Nisbett, taken on April 15, 2021.

5. Zoom Expert Deposition of Mark Sayers, taken April 19, 2021.

6. Plaintiff's Responses to Defendant and Counterclaim-Plaintiff Sayers Construction, LLC's Interrogatories, served on December 2, 2020.

7. Email correspondence between representatives for Sayers and representatives for Rogers, dated August 14, 2017.
**Exhibit 5 to D. Moquett deposition.**

8. Solicitation, Offer, and Award from the Western Area Power Administration ("WAPA") to Sayers for the Mead-Perkins & Mead-Marketplace 500kV Transmission Line Spacer Damper Replacement Project ("Project").
**Bates Numbered: ROGERS 000001-20**

9. WAPA Construction Contract Summary and Voucher for the Project, dated January 24, 2019.
**Bates Numbered: ROGERS 000061-65**

10. Email correspondence from Dwayne Moquett to Lou Woodward from Rogers and representatives for Sayers, dated October 14, 2017.
**Exhibit 10 to D. Moquett deposition.**

11. Email correspondence between Dwayne Moquett and Kelly Clark from Rogers, dated October 19, 2017.
**Bates Numbered: ROGERS 001712-1713**

12. Email correspondence between representatives for Rogers and representatives for Sayers, ranging from October 19, 2021, to October 25, 2021.
**Exhibit 13 to D. Moquett deposition.**

13. Email correspondence between Mark Sayers and Kriss Potts from Sayers, dated November 9, 2017.
**Exhibit 16 to D. Moquett deposition.**

14. Email correspondence from Donna Nisbett from Rogers to representatives for Sayers, dated November 1, 2017, attaching the Agreement between Contractor (Sayers) and Subcontractor (Rogers) for the Project.
**Exhibit 5 to D. Moquett deposition.**

15. Subcontract's Progress Schedule.
**Exhibit 4 of the 30(b)(6) Sayers Construction, LLC Deposition**

16. Email correspondence from Kris Potts from Sayers to Mark Sayers and Dwayne Moquett, dated February 23, 2018.
**Bates Numbered: ROGERS 001707-1708.**

17. Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to April 23, 2018.
**Exhibit 21 to D. Moquett deposition.**

18. Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to May 2, 2018.
**Exhibit 22 to D. Moquett deposition.**

19. Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to May 14, 2018.
**Exhibit 23 to D. Moquett deposition.**

20. Email correspondence between representatives from Sayers and representatives from Rogers, ranging from May 14, 2018, through May 15, 2018.
**Exhibit 24 to D. Moquett deposition.**

21. Email correspondence between representatives from Sayers and representatives for Rogers, ranging from March 5, 2018, through May 14, 2018.
**Exhibit 28 to D. Moquett deposition.**

22. Letter from Mark Sayers on behalf of Sayers Construction to Rogers, dated June 4, 2018.
**Bates Numbered: PIIC 000168-170.**

23. WAPA Mead Perkins Subcontract Change Order Number 0003 – Revision 2
**Bates Numbered: SAYERS 0001687-1689.**

24. Invoices sent by Rogers to Sayers, ranging from November 19, 2018, through June 1, 2019.
**Bates Numbered: ROGERS 000070-75.**

25. Letter correspondence from John E. McOsker, counsel for Rogers, to Philadelphia

Indemnity Insurance Company ("Philadelphia"), dated February 15, 2019.
**Bates Numbered: PIIC 000173-175.**

26. Letter from Creighton Sebra, counsel for Rogers, to Philadelphia, dated August 14, 2019.
**Bates Numbered: PIIC 000183-184.**

27. December 16, 2020 Oral Deposition of Mark Sayers as Rule 30(b)(6) Designee.

28. December 16, 2020 Oral Deposition of Mark Sayers as Rule 30(b)(6) Designee.

29. Zoom Deposition of Mark Sayers in his Personal Capacity, taken on February 8, 2021.

30. Oral and Videotaped Deposition of Lou Woodward, taken January 27, 2021.

31. Oral and Video Conferenced Deposition of Robin Rogers, in his personal capacity, taken February 3, 2021.

32. Oral Deposition of Alex Prawitz, taken on December 3, 2020

33. Videotaped Deposition via Zoom of Jack Ryan, taken January 25, 2021.

34.

35. Letter correspondence from the Federal Aviation Administration to Source Helicopters, a Division of Rogers Helicopters, Inc. ("Rogers"), dated August 1, 2017.
**Bates Numbered: ROGERS 000777-782**

36. Email correspondence from Lou Woodward from Rogers to Alex Praqitz from Sayers, dated August 25, 2017.
**Exhibit 6 to D. Moquett deposition.**

37. Email correspondence from Lou Woodward from Rogres to Kris Potts and Alex Prawitz from Sayers, dated October 19, 2017.
**Exhibit 12 to D. Moquett deposition.**

38. Email correspondence from Woodward from Rogers to Kris potts from Sayers, dated October 25, 2017.
**Exhibit 13 to D. Moquett deposition.**

39. Email correspondence between myself and Dwayne Moquett and Lou Woodward from Rogers, dated December 4, 2017.
**Exhibit 18 to D. Moquett deposition.**

40. Pricing schedule included within the Agreement Between Contractor and Subcontractor, dated November 1, 2017.

**Exhibit 4 of the 30(b)(6) Sayers Construction, LLC Deposition**

41. Defendant and Counterclaim-Plaintiff Sayers's Rule 26(a)(2) Disclosures.

42. Backing materials supporting Sayers's claimed damages. ("Sayers's general ledger for the Project, Sayers's payroll information, receipts, invoices, and other supporting documents")
**Bates Numbered: SAYERS 0001687-1740.**
**And more additional documents**

43. Backing materials supporting Sayers's claimed damages. (Bates: Sayers 0001791-1806, 1835-1844, 1846-1850)

44. The Miller Act Payment Bond.

45. All exhibits listed by Sayers herein.

## Rogers' objections to PIIC's exhibits:

1. Rule 30(b)(6) Oral deposition of Sayers Construction, LLC ("Sayers"), by and through Mark Sayers, taken on December 14, 2020.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

2. Oral and Videotaped Deposition of Dwayne Moquett, taken on January 28, 2021.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

3. Rule 30(b)(6) Oral Deposition of Source Helicopters, Division of Rogers Helicopters, Inc. ("Rogers"), by and through Robin Rogers, taken on April 15, 2021.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

4. Rule 30(b)(6) Oral Deposition of Source Helicopters, Division of Rogers Helicopters, Inc., by and through Donna Nisbett, taken on April 15, 2021.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

5. Zoom Expert Deposition of Mark Sayers, taken April 19, 2021.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

6. Plaintiff's Responses to Defendant and Counterclaim-Plaintiff Sayers Construction, LLC's Interrogatories, served on December 2, 2020.

**OBJECTION:** Rogers maintains the objections asserted within the discovery responses.

7. Email correspondence between representatives for Sayers and representatives for Rogers,

dated August 14, 2017.
**Exhibit 5 to D. Moquett deposition.**

8. Solicitation, Offer, and Award from the Western Area Power Administration ("WAPA") to Sayers for the Mead-Perkins & Mead-Marketplace 500kV Transmission Line Spacer Damper Replacement Project ("Project").
**Bates Numbered: ROGERS 000001-20**

9. WAPA Construction Contract Summary and Voucher for the Project, dated January 24, 2019.
**Bates Numbered: ROGERS 000061-65**

10. Email correspondence from Dwayne Moquett to Lou Woodward from Rogers and representatives for Sayers, dated October 14, 2017.
**Exhibit 10 to D. Moquett deposition.**

11. Email correspondence between Dwayne Moquett and Kelly Clark from Rogers, dated October 19, 2017.
**Bates Numbered: ROGERS 001712-1713**

12. Email correspondence between representatives for Rogers and representatives for Sayers, ranging from October 19, 2021, to October 25, 2021.
**Exhibit 13 to D. Moquett deposition.**

13. Email correspondence between Mark Sayers and Kriss Potts from Sayers, dated November 9, 2017.
**Exhibit 16 to D. Moquett deposition.**

14. Email correspondence from Donna Nisbett from Rogers to representatives for Sayers, dated November 1, 2017, attaching the Agreement between Contractor (Sayers) and Subcontractor (Rogers) for the Project.
**Exhibit 5 to D. Moquett deposition.**

15. Subcontract's Progress Schedule.
**Exhibit 4 of the 30(b)(6) Sayers Construction, LLC Deposition**

16. Email correspondence from Kris Potts from Sayers to Mark Sayers and Dwayne Moquett, dated February 23, 2018.
**Bates Numbered: ROGERS 001707-1708.**

17. Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to April 23, 2018.

Exhibit 21 to D. Moquett deposition.

18. Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to May 2, 2018.
**Exhibit 22 to D. Moquett deposition.**

19. Email correspondence between representatives for Sayers and representatives for Rogers, ranging from March 5, 2018, to May 14, 2018.
**Exhibit 23 to D. Moquett deposition.**

20. Email correspondence between representatives from Sayers and representatives from Rogers, ranging from May 14, 2018, through May 15, 2018.
**Exhibit 24 to D. Moquett deposition.**

21. Email correspondence between representatives from Sayers and representatives for Rogers, ranging from March 5, 2018, through May 14, 2018.
**Exhibit 28 to D. Moquett deposition.**

22. Letter from Mark Sayers on behalf of Sayers Construction to Rogers, dated June 4, 2018.
**Bates Numbered: PIIC 000168-170.**

23. WAPA Mead Perkins Subcontract Change Order Number 0003 – Revision 2
**Bates Numbered: SAYERS 0001687-1689.**

24. Invoices sent by Rogers to Sayers, ranging from November 19, 2018, through June 1, 2019.
**Bates Numbered: ROGERS 000070-75.**

25. Letter correspondence from John E. McOsker, counsel for Rogers, to Philadelphia Indemnity Insurance Company ("Philadelphia"), dated February 15, 2019.
**Bates Numbered: PIIC 000173-175.**

26. Letter from Creighton Sebra, counsel for Rogers, to Philadelphia, dated August 14, 2019.
**Bates Numbered: PIIC 000183-184.**

27. December 16, 2020 Oral Deposition of Mark Sayers as Rule 30(b)(6) Designee.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the

jury, or contains information that is otherwise inadmissible.

28. December 16, 2020 Oral Deposition of Mark Sayers as Rule 30(b)(6) Designee.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

29. Zoom Deposition of Mark Sayers in his Personal Capacity, taken on February 8, 2021.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

30. Oral and Videotaped Deposition of Lou Woodward, taken January 27, 2021.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

31. Oral and Video Conferenced Deposition of Robin Rogers, in his personal capacity, taken February 3, 2021.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication,

lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

32. Oral Deposition of Alex Prawitz, taken on December 3, 2020

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

33. Videotaped Deposition via Zoom of Jack Ryan, taken January 25, 2021.

**OBECTION:** Rogers does not object to the admission of the deposition with regards to the specific portions that are allowed, either by stipulation or order of the court, to be read/shown to the jury. As to all other portions, Rogers objects as Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible.

34. Letter correspondence from the Federal Aviation Administration to Source Helicopters, a Division of Rogers Helicopters, Inc. ("Rogers"), dated August 1, 2017.
**Bates Numbered: ROGERS 000777-782**

35. Email correspondence from Lou Woodward from Rogers to Alex Praqitz from Sayers, dated August 25, 2017.
**Exhibit 6 to D. Moquett deposition.**

36. Email correspondence from Lou Woodward from Rogres to Kris Potts and Alex Prawitz from Sayers, dated October 19, 2017.
**Exhibit 12 to D. Moquett deposition.**

37. Email correspondence from Woodward from Rogers to Kris potts from Sayers, dated October 25, 2017.
**Exhibit 13 to D. Moquett deposition.**

38. Email correspondence between myself and Dwayne Moquett and Lou Woodward from Rogers, dated December 4, 2017.
**Exhibit 18 to D. Moquett deposition.**

39. Pricing schedule included within the Agreement Between Contractor and Subcontractor, dated November 1, 2017.
**Exhibit 4 of the 30(b)(6) Sayers Construction, LLC Deposition**

40. Defendant and Counterclaim-Plaintiff Sayers's Rule 26(a)(2) Disclosures.

**OBECTION:** Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of

unfair prejudice, confusion of the issues and/or misleading the jury, or contains

information that is otherwise inadmissible

41. Backing materials supporting Sayers's claimed damages. ("Sayers's general ledger for the Project, Sayers's payroll information, receipts, invoices, and other supporting documents")
**Bates Numbered: SAYERS 0001687-1740.**
**And more additional documents**

**OBECTION:** Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair

prejudice, confusion of the issues and/or misleading the jury, or contains information that is

otherwise inadmissible.

42. Backing materials supporting Sayers's claimed damages. (Bates: Sayers 0001791-1806, 1835-1844, 1846-1850)

**OBECTION:** Irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair

prejudice, confusion of the issues and/or misleading the jury, or contains information that is

otherwise inadmissible.

43. Miller Act Payment Bond

44. PIIC adopts Sayers's exhibits identified herein as its own.

**OBECTION:** Rogers' adopts its objections to Sayers's exhibits identified herein.

**<u>Sayers's objections to PIIC's exhibits:</u>**

None.

**C.     ELECTRONIC EVIDENCE (STATE WHETHER THE PARTIES INTEND TO PRESENT ELECTRONIC EVIDENCE FOR PURPOSES OF JURY DELIBERATIONS.)**

**1.     Rogers' position:**

None.

**2.     Sayers's position:**

None.

**3.     PIIC's position:**

None.

**D.     DEPOSITIONS (a statement by each party identifying any depositions intended to be offered at the trial, except for impeachment purposes, and designating the portions of the depositions to be offered):**

**1.     Rogers will offer the following depositions:**

1.     Alex Prawitz's December 3, 2020, deposition.

A.     Mr. Prawitz was involved as an estimator for Sayers for bidding as a prime contractor on the Project to the owner, WAPA. A. Prawitz's 12-3-20 depo., pg. 18.

B.     Mr. Prawitz testified he was the estimator and project manager up until the time the contract was executed between Sayers and Rogers and at some point in time after that the project manager duties for Sayers were assigned to Jack Ryan. A. Prawitz's 12-3-20 depo., pg. 20.

C.     Mr. Prawitz testified Kris Potts was operations manager or overseeing field operations for Sayers on the Project and Marcus Willoughby may have been involved with assisting Jack Ryan. A. Prawitz's 12-3-20 depo., pgs. 20-21.

D.      Mr. Prawitz, upon being questioned about Exhibit B to the deposition (the Project contract between WAPA and Sayers), testified the completion date in which WAPA was expecting the Project to be completed would be October 14, 2018. A. Prawitz's 12-3-20 depo., pgs. 24-30.

E.      Mr. Prawitz testified the liquidated damages provision has been stricken/deleted from the Prime Contract.  A. Prawitz's 12-3-20 depo., pgs. 35-36.

F.      Mr. Prawitz testified that with regards Exhibit C to his deposition (the Subcontract), he did have a role in preparing same, as well as in terms of pricing and scheduling regarding the bid process  to the Prime Contract between WAPA and Sayers, the liquidated damages provision has been stricken/deleted. A. Prawitz's 12-3-20 depo., pgs. 35-36.

G.      Mr. Prawitz testified related to Exhibit C to his deposition (the Subcontract between Sayers and Rogers; ROGERS 000027-43), he would agree that pursuant to Section 2 of the Subcontract, Sayers agreed to pay Rogers a lump sum for completion of the scope of work. A. Prawitz's 12-3-20 depo., pg. 41.

H.      Mr. Prawitz testified that Exhibit C to his deposition (the Subcontract), Rogers' scope of work is set forth the Subcontract's Exhibit A. A. Prawitz's 12-3-20 depo., pgs. 41-42.

I.      Mr. Prawitz testified he prepared the schedule which is attached to the Subcontract as Exhibit B and that he prepared it on October 15, 2017 (the date appearing in the lower left-hand corner on document bate numbered ROGERS 000038), and that October 15, 2017, is prior to November 1, 2017, when Sayers executed the Subcontract. (See Exhibit C to his Prawitz deposition (the Subcontract between Sayers and Rogers; ROGERS 000027-43). Prawitz's 12-3-20 depo., pgs. 42-44.

J.      Mr. Prawitz testified that Sayers was responsible for securing the permits for the crossings and that not built into the schedule attached to the Subcontract as Exhibit B.  A. Prawitz's 12-3-20 depo., pgs. 46-47).

K.      Mr. Prawitz testified the schedule which is Exhibit B to the Subcontract between Sayers and Rogers (the Subcontract is Exhibit C to Mr. Prawitz's deposition), is a preliminary schedule which was intended for construction but it was a moving schedule based on production. A. Prawitz's 12-3-20 depo., pgs. 47-48.

L.      Mr. Prawitz testified that the schedule which is Exhibit B to the Subcontract between Sayers and Rogers (the Subcontract is Exhibit C to Mr. Prawitz's deposition), is dependent on all pre-construction activities being completed prior to the commencement date of 12-4-2017 referenced on Exhibit B.  For example, health and safety plan (including helicopter plans) would be items that were critical and would be needed to be completed prior to the commencement date of 12-4-2017 referenced on Exhibit B. A. Prawitz's 12-3-20 depo., pgs. 48-50.

M.      Mr. Prawitz testified that the Subcontract between Sayers and Rogers (the Subcontract is Exhibit C to Mr. Prawitz's deposition) did not require a payment performance bond from Rogers. Rather, it was only requested at bid time. A. Prawitz's 12-3-20 depo., pgs. 59-61.

N.      Mr. Prawitz testified that Exhibit D to his deposition (ROGERS 000134-136) includes an email dated December 7, 2017, he sent to Dwayne Moquett which included a revised schedule with a revised commencement date of January 8, 2018, and revised completion date of August 6, 2018.  Mr. Prawitz testified this modified the construction schedule accordingly. A.

Prawitz's 12-3-20 depo., pgs. 63-67.

O.      Mr. Prawitz testified that Exhibit D to his deposition (ROGERS  000134-136)

includes an  email dated December 7, 2017, he sent to Dwayne Moquett which included a revised

schedule with a revised commencement date of January 8, 2018, and revised completion date of

August 6, 2018, was the schedule that he intended Rogers to adhere to for the Project and that this

revised schedule for Rogers was also within the timeframes that WAPA provided to Sayers for

Sayers to complete its work under the Prime Contract. A. Prawitz's 12-3-20 depo., pgs. 67-69.

P.      Mr. Prawitz testified in the September 25, 2018, timeframe which was towards the

end of the Project, his involvement in the Project was little to none. A. Prawitz's 12-3-20 depo.,

pg. 72.

Q.      Mr. Prawitz testified that the project manager had the ability to modify the project

schedule. A. Prawitz's 12-3-20 depo., pg. 73.

R.      Mr. Prawitz testified that it would be fair to say and accurate that the project

manager and someone from upper management (Mr. Prawitz testified he would be considered

upper management) would be aware of any schedule change for the Project and that same would

have the authority to modify the Project schedule. A. Prawitz's 12-3-20 depo., pgs. 74-75.

2.      Jack Ryan's January 25, 2021, deposition

A.      Mr. Ryan worked in an independent consultant capacity for Sayers from

approximately March 2018 until September 2019. J. Ryan's 1-25-21 depo., pg. 16.

B.      While at Sayers, Mr. Ryan worked as project manager for a number of Sayers's

projects, including the North Texas, the Pennsylvania project, the Camp Swift, and the Fort Worth

projects. J. Ryan's 1-25-21 depo., pg. 18.

C.      While at Sayers, Mr. Ryan also worked on the Project (whose project manager for Sayers was Marcus Willoughby) as was asked to create an Excel spreadsheet in about April 2018 that would kinda track the progress of the Project. J. Ryan's 1-25-21 depo., pgs. 18-19.

D.      Mr. Ryan testified, to his knowledge, Plaintiff was the only subcontractor on the Project. J. Ryan's 1-25-21 depo., pgs. 19-20.

E.      Mr. Ryan testified, to the best of his understanding, , the Project was to be complete in the September/October time frame. J. Ryan's 1-25-21 depo., pgs. 20-21.

F.      Mr. Ryan testified Mr. Willoughby was Sayers's project manager for the duration of the Project, Chris Potts was senior leadership (director of operations), and Alex Prawitz was the Project estimator. J. Ryan's 1-25-21 depo., pgs. 28-29.

G.      Exhibit 4 to Mr. Ryan's deposition is a collection of emails from May 14, 2018, to June 25, 2018, which are generally emails updating the overall completion percentage of the Project as well as the percent of work that was completed. J. Ryan's 1-25-21 depo., pgs. 29-31.

H.      Exhibit 5 (ROGERS 000172) to Mr. Ryan's deposition is an email dated September 3, 2018, which provides that the Project was 91 percent of the way complete as of September 3, 2018 and that the Project was ahead of schedule; on September 3, 2018, Mr. Ryan's understanding was the Project on schedule to be completed on time. J. Ryan's 1-25-21 depo., pgs. 32-33.

I.      Exhibit 6 (ROGERS 000137) to Mr. Ryan's deposition is change authorization order which at paragraph 2 states "Original schedule/deliver dates: 9/25/2018." It was Mr. Ryan's understanding that the Project's completion date was 9-25-2018 and this change authorization order adjusts the schedule to October 25, 2018. J. Ryan's 1-25-21 depo., pgs. 34-38.

J.      Mr. Ryan testified he remembers something about the Project being shut down from the Federal Aviation Administration. J. Ryan's 1-25-21 depo., pgs. 37.

**2.      Sayers will offer the following depositions:**

**A.      Oral and Videotaped Deposition of Dwayne Moquett, taken January 28, 2021[15]**

- 8:13-18
- 18:21-23
- 19:10-20:6
- 20:10-14
- 29:3-18
- 30:9-20
- 31:21-32:1
- 34:11-35:20
- 36:5-37:13
- 45:15-18
- 46:4-20
- 47:3-15
- 51:16-53:11
- 53:18-20
- 55:12-14
- 55:23-56:10
- 56:15-57:16
- 58:5-11
- 60:22-61:2
- 61:23-62:24
- 63:3-65:2
- 67:4-24
- 68:23-69:17
- 70:20-72:23
- 73:1-12
- 74:4-7
- 93:9-94:10
- 103:15-105:7
- 106:2-18
- 110:17-111:20
- 112:21-113:6
- 115:1-4
- 116:21-117:8
- 120:13-120:25

---

[15]      Sayers offers the deposition of Moquett on the assumption he is outside the control of Plaintiffs and will not otherwise be made available as a live witness at trial.

1    • 126:21-127:7
2    • 127:17-128:13
     • 130:20-132:22
3
4  **B.    Deposition of Lou Woodward, taken [date][16]**

5    • 7:17-8:4
6    • 9:11-10:2
     • 16:8-15 (end at "at that time.")
7    • 17:5-6
8    • 30:20 (start at "You started in 2011") - 31:13
     • 31:17-32:7
9    • 45:19 (start with "I am going") – 46:18
10   • 48:25-49:5
     • 49:13-54:15
11   • 54:21-22
     • 54:25-55:3
12   • 56:22-57:21
13   • 63:7-64:10
14   • 75:19-22
     • 77:20-21 (end with "Yes, I am.")
15   • 77:24-78:5
16   • 105:2-107:4
     • 110:25-112:10
17   • 117:9-15
     • 118:1-119:6
18   • 122:11-18
     • 123:24-124:10
19   • 125:4-13
20   • 125:24-126:9
     • 129:9-12
21   • 130:3-5
22   • 130:17-131:9
     • 131:17-18
23   • 131:21-132:9
     • 132:14-16
24

25 ─────────────────────────
[16]      Sayers offers the deposition of Woodward on the assumption he is outside the control of Plaintiffs and will
26  not otherwise be made available as a live witness at trial.

27 ─────────────────────────

28

- 132:19-25
- 133:3
- 133:19-24
- 141:2-3
- 141:5-142:25
- 143:4-143:18 (end with "That was us.")
- 146:6-11 (end with "Replacement Project.")
- 146:15-18
- 149:21-150:17
- 151:23-153:11
- 155:17-156:13
- 156:17-158:10

**C.    Deposition of Jack Ryan, taken January 25, 2021**

- Unobjected-to portions of testimony identified by Rogers
- 34:10-13
- 34:22-35:1
- 35:9-23
- 37:12-22

**D.    Deposition of Alex Prawitz, taken December 3, 2020**

- Unobjected-to portions of testimony identified by Rogers
- 36:24-37:12
- 73:5-23
- 74:9-11

**3.    <u>PIIC will offer the following depositions:</u>**

1.  30(b)(6) Oral Deposition of Sayers Construction, LLC, by and through Mark Sayers, taken on December 14, 2020 ("Sayers 30(b)(6) Dep."):

| | |
|---|---|
| 25:9-15, | 111:17-112:3, |
| 30:8-16, | 114:25-116:21, |
| 51:11-52:12, | 117:14-118:4, |
| 52:17-53:20, | 131:10-14, |
| 106:9-14, | 132:10-16, |
| 108:21-110:7, | 136:11-17 |

2. Oral and Videotaped Deposition of Dwayne Moquett, taken on January 28, 2021 ("Moquett Dep."):

36:5-37:13
58:5-11
63:25-64:8
67:4-13, 20-24
126:21-127:7
127:17-19

3. Rule 30(b)(6) Oral Deposition of Source Helicopters, Division of Rogers Helicopters, Inc. ("Rogers"), by and through Robin Rogers, taken on April 15, 2021:
12:8-13:22

4. Rule 30(b)(6) Oral Deposition of Source Helicopters, Division of Rogers Helicopters, Inc., by and through Donna Nisbett, taken on April 15, 2021.

| | |
|---|---|
| 11:13-22 | 19:1-5 |
| 12:8-13:22 | 19:13-15 |
| 16:16-19 | 19:16-21 |
| 16:20-17:14 | 20:3-5 |
| 17:15-17 | 20:6-23 |
| 17:18-18:6 | 21:8-11 |
| 18:9-19 | 21:19-21 |
| 18:13-15 | 21:22-25 |

5. Zoom Expert Deposition of Mark Sayers, taken April 19, 2021:
77:22-78:4
78:8-79:18
86:10-87:21
90:20-91:1
91:6-92:8

6. December 16, 2020 Oral Deposition of Mark Sayers as Rule 30(b)(6) Designee.
24:10-25:1

7. December 16, 2020 Oral Deposition of Mark Sayers as Rule 30(b)(6) Designee
20:25-21:6

8. Zoom Deposition of Mark Sayers in his Personal Capacity, taken on February 8, 2021.

| | |
|---|---|
| 131:22-132:2 | 135:21-136:5 |

| | |
|---|---|
| 137:7-17 | 208:13-25 |
| 137:18-21 | 209:11-25 |
| 138:12-18 | 211:6-212:23 |
| 183:4-23 | 215:1-23 |
| 186:9-17 | 221:16-223:16 |
| 186:23-187:10 | 223:17-226:22 |
| 188:11-189:16 | 239:8-241:8 |
| 190:9-191:3 | |

9.  Oral and Videotaped Deposition of Lou Woodward, taken January 27, 2021.
59:16-24
88:16-22
91:14-18

10. Oral and Video Conferenced Deposition of Robin Rogers, in his personal capacity, taken February 3, 2021.
65:3-23
69:20-76:6

11. Oral Deposition of Alex Prawitz, taken on December 3, 2020
36:20-37:12
73:14-74:17
Pgs 63-67

12. Videotaped Deposition via Zoom of Jack Ryan, taken January 25, 2021.
34:10-13
34:22-35:1
35:9-23
37:12-14

E.      **OBJECTIONS TO DEPOSITIONS.**

1.      **Rogers objects to Sayers's and PIIC's depositions as follows:**

**Rogers' Objections to Sayers's depositions:**

**Oral and Videotaped Deposition of Dwayne Moquett, taken January 28, 2021[17]**

---

[17] Sayers offers the deposition of Mr. Moquett on the assumption he is outside the control of Plaintiffs and will not otherwise be made available as a live witness at trial.

- 34:11-35:20
  Calls for speculation; vague as to time

- 46:4-20
  Argumentative; asked and answered

- 47:3-15
  Asked and answered; assumes facts not in evidence; lacks foundation; already testified there was a typo

- 51:16-53:11
  As to 52:14-15, asked and answered
  As to 52:24 to 53:11, irrelevant in light of the court's ruling on Sayers's claims regarding the bond issue; calls for speculation

- 63:3-65:2
  As to 64:16-20, lacks foundation, assumes facts not in evidence, argumentative.

- 67:4-24
  As to 67:13-16, misstates prior testimony, assumes facts not in evidence, lacks foundation, argumentative

- 68:23-69:17
  As to 69:8-11, calls for speculation, calls for a legal conclusion, assumes facts not in evidence; lacks foundation

- 70:20-72:23
  As to 70:24-25, calls for speculation. lacks foundation, assumes facts not in evidence.

- 74:4-7
  Misstates testimony, assumes facts not in evidence.
- 93:9-94:10
  As to 93:18-19, misstates prior testimony, lacks foundation, assumes facts not in evidence, argumentative, calls for a legal conclusion.

- 110:17-111:20
  As to 111:2-3, the document speaks for itself, lacks foundation and assumes facts not in evidence, calls for speculation.

- 120:13-120:25
  Fails to include the full question and does not include the answer

- 130:20-132:22
  As to 131:21-22, document speaks for itself, lacks foundation, assumes facts
  not in evidence, vague and ambiguous

**Deposition of Alex Prawitz, taken December 3, 2020**

- 73:5-13
- 73:17-23
  As to 73:5-13 and 73:17-23, add 73:14-16 for completeness
- 74:9-11
  As to 74:9-11, add question at 74:6-8 for completeness


**Rogers' Objections to PIIC's depositions:**

Zoom Deposition of Mark Sayers in his Personal Capacity, taken on February 8, 2021.

As to each of the following sections, objection is hereby made as irrelevant, hearsay, lacks authentication, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury, or contains information that is otherwise inadmissible
131:22-132:2
135:21-136:5
137:7-17
137:18-21
138:12-18
183:4-23
186:9-17
186:23-187:10
188:11-189:16
190:9-191:3
208:13-25
209:11-25
211:6-212:23
215:1-23
221:16-223:16
223:17-226:22
239:8-241:8

Zoom Expert Deposition of Mark Sayers, taken April 19, 2021:

77:22-78:4
78:8-79:18
As to both of these citations, objection, answers lack foundation, assume facts not in evidence, are based upon unsupported assumptions, and non-responsive.

Rule 30(b)(6) Oral Deposition of Source Helicopters, Division of Rogers Helicopters, Inc. ("Rogers"), by and through Robin Rogers, taken on April 15, 2021:

12:8-13:22, objection, relevance, hearsay, lacks foundation, poses a risk of unfair prejudice, confusion of the issues and/or misleading the jury

Oral and Videotaped Deposition of Dwayne Moquett, taken on January 28, 2021 ("Moquett Dep."):

67:4-13, 20-24
As to 67:14-16, objection, misstates testimony, assumes facts not in evidence, lacks foundation, argumentative.

December 16, 2020 Oral Deposition of Mark Sayers as Rule 30(b)(6) Designee.
24:10-25:1, objection, non-responsive, assumes facts not in evidence, answer calls for speculation.

Oral and Video Conferenced Deposition of Robin Rogers, in his personal capacity, taken February 3, 2021.

69:20-76:6
As to 71:16-18, objection, calls for speculation, lacks foundation, the document speaks for itself. The document also doesn't include the e-mail that is being referenced.

As to 72:8-10, objection, calls for a legal conclusion, calls for speculation, assumes facts not in evidence, lacks foundation.

As to 72:16-18, objection, calls for a legal conclusion, calls for speculation, assumes facts not in evidence, lacks foundation, assumes facts as to whether that deadline was moved at any point in time. Vague as to deadline.

As to 72:25 to 76:1, same objections as above.

As to 73:6-8, objection, calls for a legal conclusion, lacks foundation, assumes facts not in evidence.

As to 73:13-15, objection, asked and answered, calls for a legal conclusion, lacks foundation, assumes facts not in evidence.

As to 74:1-2, same objections as above.  Also alls for speculation. It's also vague as to "maintaining."

As to 74:7-8, objection, calls for a legal conclusion, lacks foundation, assumes facts not in evidence, vague and ambiguous as to "contractual obligations."

As to 74:17-18, objection, vague as to "obligations."  Calls for a legal conclusion.

As to 75:5-6, objection, asked and answered.

As to 75:17-18, objection, vague as to the term "anyone." Vague as to time, calls for speculation, lacks foundation, assumes facts not in evidence, calls for a legal conclusion.

## 2.      Sayers objects to Rogers' and PIIC's depositions as follows:

<u>Sayers's Objections to Rogers's Deposition Designations</u>

- J. Ryan's 1-25-21 depo., pgs. 20-21
    - Objections: Calls for improper legal conclusion from lay witness.

- J. Ryan's 1-25-21 depo., pgs. 32-33.
    - Objections: Calls for legal conclusion from lay witness to the extent questions seek testimony concerning the timely completion of the Subcontract. *See* 33:14-17.

- Mr. Prawitz testified the liquidated damages provision has been stricken/deleted from the Prime Contract.  A. Prawitz's 12-3-20 depo., pgs. 35-36.
    - Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified that with regards Exhibit C to his deposition (the Subcontract), he did have a role in preparing same, as well as in terms of pricing and scheduling regarding the bid process to the Prime Contract between WAPA and Sayers, the liquidated damages provision has been stricken/deleted. A. Prawitz's 12-3-20 depo., pgs. 35-36.
    - Objections to questions eliciting testimony regarding the liquidated damages provision of the Subcontract: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified related to Exhibit C to his deposition (the Subcontract between Sayers and Rogers; ROGERS 000027-43), he would agree that pursuant to Section 2 of the Subcontract, Sayers agreed to pay Rogers a lump sum for completion of the scope of work. A. Prawitz's 12-3-20 depo., pg. 41.
    - Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified that Exhibit C to his deposition (the Subcontract), Rogers' scope of work is set forth the Subcontract's Exhibit A. A. Prawitz's 12-3-20 depo., pgs. 41-42.
    - Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified the schedule which is Exhibit B to the Subcontract between Sayers and Rogers (the Subcontract is Exhibit C to Mr. Prawitz's deposition), is a preliminary schedule which was intended for construction, but it was a moving schedule based on production. A. Prawitz's 12-3-20 depo., pgs. 47-48.
    - Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified that the schedule which is Exhibit B to the Subcontract between Sayers and Rogers (the Subcontract is Exhibit C to Mr. Prawitz's deposition), is dependent on all pre-construction activities being completed prior to the commencement date of 12-4-2017 referenced on Exhibit B.  For example, health and safety plan (including helicopter plans) would be items that were critical and would be needed to be completed prior to the commencement date of 12-4-2017 referenced on Exhibit B. A. Prawitz's 12-3-20 depo., pgs. 48-50.
    - Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified that the Subcontract between Sayers and Rogers (the Subcontract is Exhibit C to Mr. Prawitz's deposition) did not require a payment performance bond from Rogers. Rather, it was only requested at bid time. A. Prawitz's 12-3-20 depo., pgs. 59-61.

  o Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified that Exhibit D to his deposition (ROGERS 000134-136) includes an email dated December 7, 2017, he sent to Dwayne Moquett which included a revised schedule with a revised commencement date of January 8, 2018, and revised completion date of August 6, 2018.  Mr. Prawitz testified this modified the construction schedule accordingly. A. Prawitz's 12-3-20 depo., pgs. 63-67.

  o Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified that Exhibit D to his deposition (ROGERS 000134-136) includes an email dated December 7, 2017, he sent to Dwayne Moquett which included a revised schedule with a revised commencement date of January 8, 2018, and revised completion date of August 6, 2018, was the schedule that he intended Rogers to adhere to for the Project and that this revised schedule for Rogers was also within the timeframes that WAPA provided to Sayers for Sayers to complete its work under the Prime Contract. A. Prawitz's 12-3-20 depo., pgs. 67-69.

  o Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified that the project manager had the ability to modify the project schedule. A. Prawitz's 12-3-20 depo., pg. 73.

  o Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

- Mr. Prawitz testified that it would be fair to say and accurate that the project manager and someone from upper management (Mr. Prawitz testified he would be considered upper management) would be aware of any schedule change for the Project and that same would have the authority to modify the Project schedule. A. Prawitz's 12-3-20 depo., pgs. 74-75.

  o Objections: Irrelevant; prejudicial; calls for legal conclusion from lay witness.

**3.  PIIC objects to Rogers' and Sayers's depositions as follows:**

PIIC joins in the objections of Sayers to Rogers' deposition as PIIC's own objections.

## VIII.  WITNESSES.

The following witnesses will be called by the parties at trial.

### A.  Rogers' witnesses:

1.  Ted Scott
    Managing Director
    Secretariat
    2100 E Grand Ave., Suite 375
    El Segundo, CA 90245

www.secretariat-intl.com
tscott@secretariat-intl.com
office phone: 1.310.819.9475

2.    Vernia Rogers, President
      Rogers Helicopters, Inc.
      5508 E. Aircorp Way
      Fresno, California 93727

3.    Robin Rogers, Vice President
      Rogers Helicopters, Inc.
      5508 E. Aircorp Way
      Fresno, California 93727

4.    Donna Nesbit, General Manager
      Rogers Helicopters, Inc.
      5508 E. Aircorp Way
      Fresno, California 93727

5.    Dwayne Moquett, Operations Manager (see January 28, 2021, deposition)
      Rogers Helicopters, Inc.
      5508 E. Aircorp Way
      Fresno, California 93727

6.    Lou Woodward
      Rogers Helicopters, Inc.
      5508 E. Aircorp Way
      Fresno, California 93727

7.    Alex Prawitz
      Via December 3, 2020, deposition

8.    Jack Ryan
      Via January 25, 2021, deposition

**B.    <u>Sayers's witnesses:</u>**

1.    Mark Sayers, President
      Sayers Construction, LLC
      c/o Counsel for Sayers Construction, LLC

2.    Ted Scott
      Managing Director
      Secretariat
      2100 E Grand Ave., Suite 375
      El Segundo, CA 90245
      www.secretariat-intl.com

tscott@secretariat-intl.com
office phone: 1.310.819.9475

3.     Vernia Rogers, President
Rogers Helicopters, Inc.
5508 E. Aircorp Way
Fresno, California 93727

4.     Robin Rogers, Vice President
Rogers Helicopters, Inc.
5508 E. Aircorp Way
Fresno, California 93727

5.     Donna Nesbit, General Manager
Rogers Helicopters, Inc.
5508 E. Aircorp Way
Fresno, California 93727

6.     Lou Woodward
Rogers Helicopter, Inc.
5508 E. Aircorp Way
Fresno, California 93727

7.     Dwayne Moquett (via deposition testimony)

8.     Any witnesses identified by Rogers and PIIC

**C.**     **<u>PIIC's witnesses:</u>**

1. Alex Prawitz, Sayers's representative
     Via December 3, 2020, deposition
2. Kris Potts, Project manager for Sayers
     Sayers Construction, LLC
     104 W. MLK Dr.
     San Marcos, TX 78666

3. Mark Sayers
     Sayers Construction, LLC
     104 W. MLK Dr.
     San Marcos, TX 78666

4. Jack Ryan, a project manager for Sayers
     Sayers Construction, LLC
     104 W. MLK Dr.
     San Marcos, TX 78666

5. Marcus Willoughby, a project manager for Sayers

Sayers Construction, LLC
104 W. MLK Dr.
San Marcos, TX 78666

6.  Dwayne Moquett, Operations Manager of Rogers
    Rogers Helicopters, Inc.
    5508 E. Aircorp Way
    Fresno, California 93727

7.  Lou Woodward, Business Development at Rogers
    Rogers Helicopters, Inc.
    5508 E. Aircorp Way
    Fresno, California 93727

8.  Donna Nisbett, from Rogers
    Rogers Helicopters, Inc.
    5508 E. Aircorp Way
    Fresno, California 93727

9.  Robin Rogers, from Rogers
    Rogers Helicopters, Inc.
    5508 E. Aircorp Way
    Fresno, California 93727

10. Eric Jordan, from Western Area Power Authority ("WAPA")
    Western Area Power Administration
    PO Box 6457
    Phoenix, AZ 85005-6457

11. Western adopts all witnesses of Sayers as its own and incorporates them herein.

## IX.    MOTIONS IN LIMINE ALREADY FILED.

Presently none. See LR 16-3(a).

## X.    OTHER.

Pursuant to LR 16-3(c), unless offered for impeachment purposes, no exhibits will be received and no witnesses will be permitted to testify at the trial unless listed in the pretrial order. However, for good cause shown, the court may allow an exception to these provisions.

## XI.    STIPULATIONS AND TRIAL DISCLOSURES

The following stipulations are agreed upon by the parties as discussed below and are made

a part of this Joint Final Pretrial Order.

The parties agree to the following procedure, which will govern the disclosure of witnesses, exhibits, deposition testimony and demonstratives to use at trial and the process to identify any objections remaining between the parties regarding these disclosures.

### A.    Motions

All motions for judgment as a matter of law pursuant to FED. R. CIV. P. 50(a) may be brought to the Court orally or in writing. Unless the Court sets alternative deadlines, all oppositions to motions filed pursuant to FED. R. CIV. P. 50(b) must be filed within 28 days of the filing of the motion. All replies in support of the motions must be filed within 21 days of service of any oppositions. The parties reserve their ability to seek reasonable extensions of these deadlines, subject to the Court's approval.

### B.    Exhibits

(1)    The parties agree any exhibit listed on any party's exhibit list as to which no objection remains pending at the time of opening statements may be shown to the jury during opening statements. The parties agree exhibits to be used or offered into evidence solely for impeachment need not be included on the parties' trial exhibit lists. Except for such documents used solely for impeachment, a party may not offer substantive documentary evidence not appearing on its exhibit list or the exhibit list of the other party, unless the Court determines that the interest of justice so warrants.

(2)    Each party has the right to use an exhibit on either party's exhibit list, even if not introduced by the designating party, subject to all evidentiary objections. Another party's exhibit is not, however, admissible simply by virtue of being on an exhibit list, and is subject to any objections, including for example, hearsay objections that may apply to one party but not the other.

(3)    The parties will exchange by email addressed to all counsel of record (or an agreed representative) their lists of exhibits they intend to use during direct examination or by witnesses called by designation by 7:00 p.m. one (1) calendar day before their intended use (i.e., Sunday

evening for a witness to be called on Monday).

(4)     No exhibit will be admitted unless used by a witness, who must at least be shown the exhibit.

(5)     Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence or used during examination of an expert witness where the documents were relied upon by the expert in forming the expert's opinions and disclosed in that expert's report, and for which there is no objection, or any objection has been overruled.

### C.     Witnesses

The parties will identify by email witnesses to be called live or by deposition (in the anticipated order that they will be called) at 7:00 p.m. two (2) calendar days in advance of the day of trial during which the witnesses will testify. For example, if a witness will testify on a Monday, the witness must be identified by 7:00 p.m. on the previous Saturday. The parties are to include only the witnesses they reasonably intend to call in good faith and over-designation of their call list is strongly discouraged.

### D.     Deposition Testimony

(1)     For deposition designations, the parties will provide a list of any deposition. designations that party intends to present, along with estimated run-times for video, by 7:00 p.m. two (2) days before the designation is to be read or played. Any counter-designations and objections shall be provided by 7:00 p.m. the day before the deposition is to be played. All objections to counter-designations shall be provided no later than 8:00 p.m. the day the counter-designations are provided. The parties shall then meet and confer regarding all objections by 9:00 p.m. and provide the Court with a list of the remaining objections by 7 a.m. Any unresolved objections will be raised with the Court the next morning.

(2)     Unless used for impeachment, all designated deposition testimony shall be played by video unless both parties reach an agreement to read the deposition testimony live or the Court orders otherwise. The parties' designations and counter-designations shall be played together.

(3)     Prior to the introduction of deposition designations or counter-designations, counsel for the introducing party may provide a short statement to the jury with the identity and relevant current or former job title or description of the witness, which statement the parties agree is not evidence.

### E.     Demonstrative Exhibits

(1)     The parties will exchange by email copies of all documentary, graphic, slide, animation, boards, and any other form of Demonstratives they plan to use at trial for use during direct examination—but not for cross-examination—and an identification of witnesses each such Demonstrative will be use with, by 7:00 p.m. the night before their intended use. In other words, if a demonstrative will be used on Monday, it must be exchanged or made available by 7:00 p.m. on the previous Sunday. That same evening, the parties shall exchange objections to demonstratives by 8:00 p.m. and then meet and confer regarding all objections by 9:00 p.m. and provide the Court with a list of the remaining objections by 7 a.m. To the extent good faith efforts to resolve objections fail and there are additional unresolved objections about demonstrative exhibits, the objecting party will raise the objections with the Court the next morning or as directed by the Court before their use. Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

(2)     "Demonstratives" do not include (a) the blowup (enlargement), highlighting, ballooning, etc. of trial exhibits (so long as the underlying exhibit is pre-admitted or any objections thereto have been resolved) or transcripts of testimony, (b) demonstratives previously displayed in the course of the trial. Reasonable non-substantive edits or corrections of typographical and similar errors to demonstrative exhibits may be made to such exhibits prior to use.

(3)     For clarity, Demonstratives include physical or other non-documentary demonstratives (such as poster boards, product samples, prior art sample, live product, or prior art demonstrations). With respect to physical or non-documentary demonstratives, photos or electronic images of the physical demonstrative must be disclosed in accordance with the schedule

and procedure set forth in subparagraph (1), and also made available for physical inspection if requested by the opposing party. Similarly, hand-written or other demonstratives that a party plans to create during opening statements or witness direct examinations must be disclosed (by providing a description and purpose of the Demonstrative) in accordance with the schedule set forth in subparagraph (1).

(4)      Demonstratives for direct examination and opening and trial exhibits must be cleared of outstanding objections before being shown to the jury. Additionally, any transcripts of testimony (excluding testimony given during this trial) must be cleared of outstanding objections before being shown to the jury during opening or on direct examination.

(5)      The parties agree that the demonstrative exhibits the parties intend to use at trial do not need to be included on their respective lists of trial exhibits. The parties further agree that, unless otherwise ordered by the Court, demonstrative exhibits will not be admitted as evidence and will not be made available to the jury during deliberations.

(6)      The parties agree to discuss in good faith a reasonable time for exchange of previously undisclosed closing demonstratives. For closing arguments, the parties agree that a party need not provide advance notice regarding its intent to use demonstratives previously used during the course of trial or enlargements, highlighting, ballooning, or other annotations of admitted trial exhibits.

(7)      To the extent a video is embedded in a demonstrative (e.g., a slide), the parties agree to produce a native version of the video upon request by the opposing party.

**F.      Disclosures for Opening Statements**

Any demonstratives (documentary, graphic, slide, animation, mock-ups to be created during opening statements with detail regarding their substance, and any other form of demonstratives), deposition testimony, and exhibits to be used during opening statements are to be exchanged by 12:00 p.m. one (1) day before opening statements. Any physical demonstratives, including any poster boards, must be made available for inspection at the same time and physical

demonstratives must also be made available for inspection at the same time along with the other demonstratives.

Any objections to the opening statement disclosures must be provided by 3:00 p.m. the day the disclosures are received. The parties shall meet and confer telephonically and attempt to resolve any objections to these disclosures by 5:00 p.m. If the parties cannot resolve the objections, the unresolved issues will be raised with the Court in the morning, before opening statements are presented to the jury. Demonstratives exchanged will not be used by an opposing party prior to being used by the disclosing party.

## XII.   POSSIBLE TRIAL DATES.

The attorneys have met but were unable to jointly offer three (3) trial dates.[18] They hereby each offer the following three (3) trial dates:

Rogers:[19]
1.   March 13, 2023
2.   March 27, 2023
3.   April 10, 2023

Sayers:
1.   July 10, 2023
2.   July 24, 2023
3.   August 7, 2023

PIIC:
1.   July 10, 2023
2.   July 24, 2023
3.   August 7, 2023

It is expressly understood by the undersigned that the court will set the trial of this matter on one of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the court's calendar.

## XIII.   ESTIMATE FOR HOW LONG TRIAL WILL TAKE.

---

[18] The parties will continue to confer on these dates and will inform the Court should any agreement be reached.
[19] Counsel for Sayers has previously set trial dates that will conflict with the dates proposed by Rogers.

It is estimated that the trial will take a total of 4-5 days.

Respectfully submitted:

| | |
|---|---|
| **GRIFFITH BARBEE, PLLC**<br><br>By _/s/Casey Griffith<br>Casey Griffith, Esq. (pro hac vice)<br>Michael Barbee, Esq. (pro hac vice)<br>One Arts Plaza<br>1722 Routh Street, Suite 710<br>Dallas, Texas 75201<br>Ph. (214) 446-6020; fax (214) 446-6021<br>Email: casey.griffith@griffithbarbee.com<br>Email: michael.barbee@griffithbarbee.com<br>Email: maeghan.whitehead@grffithbarbee.com<br><br><br>Karl O. Riley, Esq. (NSBN 12077)<br>Cozen O'Connor<br>3753 Howard Hughes Parkway, Suite 200<br>Las Vegas, Nevada 89169<br>Ph. (702) 470-2330; fax (702) 470-2370<br>Email: koriley@cozen.com<br>Attorneys for Defendants, Sayers Construction, LLC<br>**Dated:** 8/29/2022 | **THE FAUX LAW GROUP**<br><br>By _/s/ Kurt C. Faux<br>Kurt C. Faux, Esq. (NSBN 3407)<br>Willi H. Siepmann, Esq. (NSBN 2478)<br>Jordan F. Faux, Esq. (NSBN 12205)<br>2625 North Green Valley Parkway, #100<br>Henderson, Nevada 89014<br>Ph.(702) 458-5790; Fax: (702) 458-5794<br>Email: kfaux@fauxlaw.com<br>Attorneys for Philadelphia Indemnity<br>Insurance Company<br>**Dated:** 8/29/2022<br><br>**CLARK HILL PLLC**<br><br>By _/s/ Bert Wuester Jr.<br>D. Creighton Sebra, Esq. (pro hac vice)<br>1055 West Seventh Street, 24th Floor<br>Los Angeles, California 90017<br>Ph. (213) 891-9100; fax (213) 488-1178<br>Email: CSebra@ClarkHill.com<br><br>Bert Wuester Jr., Esq. (NSBN 5556)<br>CLARK HILL, PLLC<br>3800 Howard Hughes Parkway, Suite 500<br>Las Vegas, Nevada 89169<br>Ph. (702) 862-8300; fax (702) 862-8400<br>Email: bwuester@clarkhill.com<br>Attorneys for Use-Plaintiff<br>**Dated:** 8/29/2022 |

## ACTION BY THE COURT

This case is set for court/jury trial on the fixed/stacked calendar on **July 10, 2023, at 9:00 a.m.**  Calendar call will be held on **July 5, 2023, at 1:30 p.m.**

IT IS SO ORDERED:

U.S. DISTRICT COURT JUDGE
DATED: September 7, 2022